No. 24-3088

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ERIC S. CLARK

*Plaintiff-Appellant,*

*v.*

MERRICK GARLAND, United States Attorney General,
in both his official and individual capacities et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Kansas (No. 2:23-CV-02170-JAR-RES)
The Honorable Julie A. Robinson, Senior United States District Judge

## BRIEF OF APPELLEE

KATE E. BRUBACHER
*United States Attorney*
*District of Kansas*

BRIAN E. VANORSBY, KS. S.CT. # 27606
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS 67202
Tel: (316) 269-6481
Fax: (316) 269-6484
Email: Brian.Vanorsby@usdoj.gov
*Attorneys for Appellees*

ORAL ARGUMENT IS NOT REQUESTED

## <u>TABLE OF CONTENTS</u>

PRIOR OR RELATED APPEALS ........................................................................ vi

JURISDICTIONAL STATEMENT ........................................................................1

ISSUE PRESENTED ..............................................................................................2

STATEMENT OF THE CASE ................................................................................3

SUMMARY OF ARGUMENT ...............................................................................9

ARGUMENT AND AUTHORITIES ....................................................................10

   I.     Standard of Review ....................................................................................10

   II.    The district court correctly concluded that Clark lacks standing to seek
          equitable relief..........................................................................................10

      A.   Clark lacks standing to pursue his claim that § 922(t)'s background check
           requirement prevented his prior firearm purchases from taking place in a
           timely manner. ......................................................................................11

      B.   Clark failed to establish standing to assert pre-enforcement challenges to
           18 U.S.C. § 922(t), (g)(3), and (k)........................................................15

      C.   Clark waived standing for his broad challenge to the Gun Control Act of
           1968. .....................................................................................................20

CONCLUSION .....................................................................................................21

CERTIFICATE OF COMPLIANCE .....................................................................23

CERTIFICATE OF SERVICE ..............................................................................24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Bivens v. Six Unknown Fed. Narcotics Agents*,
    403 U.S. 388 (1971) ..........................................................................7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..................................................... 9, 10, 14, 15

*Colorado Outfitters Ass'n v. Hickenlooper*,
    823 F.3d 537 (10th Cir. 2016)................................................. 20, 21

*Dickerson v. New Banner Inst., Inc.*,
    460 U.S. 103 (1983) ..........................................................................3

*Garrett v. Selby Connor Maddux & Janer*,
    425 F.3d 836 (10th Cir. 2005).........................................................10

*Jojola v. Chavez*,
    55 F.3d 488 (10th Cir. 1995)..........................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................11

*Montana Shooting Sports Association v. Holder*
    727 F.3d 975 (9th Cir. 2013)..........................................................16

*Mississippi State Democratic Party v. Barbour*,
    529 F.3d 538 (5th Cir. 2008)..........................................................15

*Murthy v. Missouri*,
    144 S. Ct. 1972, 219 L. Ed. 2d 604 (2024) .................................9, 20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022) ..............................................................................8

*Paxton v. Dettelbach*,
    105 F.4th 708 (5th Cir. 2024)............................................ 16, 17, 18

*Raines v. Byrd*,
521 U.S. 811 (1997) .........................................................................10

*Sierra Club v. United States Env't Prot. Agency*,
964 F.3d 882 (10th Cir. 2020) ..........................................................6

*Steffel v. Thompson*,
415 U.S. 452 (1974) .........................................................................17

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .........................................................................15

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .........................................................................15

*Toevs v. Reid*,
685 F.3d 903 (10th Cir. 2012) ................................................... 20, 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .........................................................................10

*United States v. Melville*,
309 F. Supp. 774 (S.D.N.Y. 1970) .....................................................3

*United States v. Texas*,
599 U.S. 670 (2023) .........................................................................11

*Valley Forge Christian College v. Americans United for Separation of Church and
State, Inc.*,
454 U.S. 464 (1982) .........................................................................11

*Young v. Colorado Dep't of Corr.*,
94 F.4th 1242 (10th Cir. 2024).........................................................10

*Zimmerman v. City of Austin, Texas*,
881 F.3d 378 (5th Cir. 2018)............................................................17

## **Statutes**

18 U.S.C. § 921 ...................................................................................................3

18 U.S.C. § 922 .................................................................................................20

18 U.S.C. § 922(d)(3) ..........................................................................................4

18 U.S.C. § 922(g) ............................................................................................3, 4

18 U.S.C. § 922(g)(3) ............................................................. 3, 4, 6, 9, 15, 18

18 U.S.C. § 922(k) ...................................................................... 6, 9, 15, 19

18 U.S.C. § 922(t) ........................................................ 4, 6, 9, 11, 12, 14, 15, 18

18 U.S.C. § 922(t)(1)-(2) .....................................................................................4

18 U.S.C. § 923(i) ..............................................................................................6

28 U.S.C. § 1291 ................................................................................................1

42 U.S.C. § 1983 ................................................................................................7

## **Rules**

10th Cir. R. 31.5 ...............................................................................................24

10th Cir. R. 32(B) .............................................................................................23

Fed. R. App. P. 4(a)(1)(B) ..................................................................................1

Fed. R. App. P. 28(d) .........................................................................................1

Fed. R. App. P. 32(a)(5) ....................................................................................23

Fed. R. App. P. 32(a)(6) ....................................................................................23

Fed. R. App. P. 32(a)(7)(B)(i) ...........................................................................23

Fed. R. App. P. 32(f) .................................................................................23

## Regulations

27 C.F.R.§ 478.102 ..................................................................................4

27 C.F.R.§ 478.124(c) .............................................................................4

28 C.F.R. § 25.1-25.11.............................................................................4

28 C.F.R. § 10(a) .....................................................................................5

28 C.F.R. § 25.3 .......................................................................................4

28 C.F.R. § 25.6(c)(1)(iv) ........................................................................5

28 C.F.R. Part 25.4...................................................................................5

## Other Authorities

S. Rep. No. 1866, 89th Cong., 2d Sess. 1 (1966) ....................................3

## PRIOR OR RELATED APPEALS

Defendant-Appellee Merrick Garland is not aware of any prior or related appeals.

## JURISDICTIONAL STATEMENT

This is an appeal from Plaintiff-Appellant Eric S. Clark's[1] challenge to the Gun Control Act of 1968. Defendant-Appellee moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. The district court granted Defendant's Motion to Dismiss on January 16, 2024, and entered judgment the same day. (ROA, Vol. I, at 208-26). Clark moved to alter or amend the judgment on January 19, 2024. (ROA, Vol. I, at 227-55). The district court denied Clark's motion to alter or amend the judgment on May 30, 2024. (ROA, Vol. I, at 344-55). Clark timely filed his notice of appeal on June 27, 2024. (ROA, Vol. I, at 356); *see also* Fed. R. App. P. 4(a)(1)(B), (a)(4). This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291.

---

[1] For purposes of clarity, and pursuant to Fed. R. App. P. 28(d), all references to the Appellant will be "Clark."

## ISSUE PRESENTED

Whether the district court correctly concluded that Clark lacks standing to obtain equitable relief based on his challenge to the Gun Control Act of 1968.

## STATEMENT OF THE CASE

### A. Legal background

The Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. § 921 et seq., was enacted in part as a reaction to the assassinations of President John F. Kennedy, Senator Robert F. Kennedy, Dr. Martin Luther King, Jr., and Medgar Evers. *United States v. Melville*, 309 F. Supp. 774, 776 (S.D.N.Y. 1970). The purpose of the GCA was "to amend existing Federal firearms control law to (1) regulate more effectively interstate commerce in firearms so as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them; (2) assist the States and their political subdivisions to enforce their firearms control laws and ordinances; and (3) help combat the skyrocketing increases in the incidence of serious crime in the United States." S. Rep. No. 1866, 89th Cong., 2d Sess. 1 (1966).

In pertinent part, Section 922(g) of the GCA prohibits certain groups from possessing or transporting any firearm with a nexus to interstate commerce. 18 U.S.C. § 922(g). "Congress' intent in enacting §[] 922(g) . . . was to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983). Section 922(g)(3) of the GCA prohibits "unlawful user[s] of . . . any controlled substance," as defined in the Controlled Substances Act (CSA), from possessing firearms. In conjunction with this prohibition, Section 922(d) prohibits transferring firearms to someone who the transferor knows or has

reason to believe falls within one of the categories of 922(g), including unlawful drug users. See 18 U.S.C. § 922(d)(3). Therefore, Section 922(g)(3) prohibits users of controlled substances from possessing firearms, and Section 922(d)(3) prohibits any person from selling firearms to a known or suspected user of a controlled substance, including marijuana.

The GCA, as amended by the Brady Handgun Violence Protection Act, also requires that individuals attempting to purchase a firearm from a federally licensed dealer or manufacturer ("federal firearms licensee" or "FFL") to undergo a criminal background check. *See* 18 U.S.C. § 922(t). To facilitate compliance with this requirement, the Brady Act directed the Attorney General to establish and operate a nationwide criminal background check system that FFLs would be required to consult to determine whether a prospective purchaser is prohibited from possessing a firearm under federal or state law. *See* 18 U.S.C. § 922(t)(1)-(2). Soon after the Brady Act's passage, the Attorney General established the National Instant Criminal Background Check System, or "NICS," 28 C.F.R. § 25.1-25.11, and assigned management of the NICS to the FBI,  § 25.3. Thus, prior to making any over-the-counter firearms transaction, the FFL is required to verify the purchaser's identity and conduct a background check through the NICS. 18 U.S.C. § 922(t); 27 C.F.R.§§ 478.102, 478.124(c).

4

After submitting the required information through NICS, an FFL will receive one of three possible responses: (1) proceed, (2) denied, or (3) delayed. *See* 28 C.F.R. § 25.6(c)(1)(iv). The FFL may proceed with the firearm transfer if it receives a "proceed" response. *Id.* The FFL is barred from transferring the firearm if it receives a "denied" response. *Id.* If the FFL receives a "delayed" response, it may complete the firearm transfer if it receives a follow-up "proceed" response, or after three business days with no follow-up response—whichever occurs first. *Id.* This minimal period allows NICS to look for potentially prohibiting information within the National Crime Information Center (NCIC), Interstate Identification Index (III) and the NICS Index. *See* 28 C.F.R. Part 25.4.

A prospective purchaser whose firearm transaction is "denied" by NICS may pursue several administrative remedies. He or she may (i) apply to the FBI (or a point-of-contact state or local agency ("POC")) to request the reasons for the denial, 28 C.F.R. § 25.10(a), (b); (ii) appeal to the FBI or a POC to challenge the accuracy of the record upon which the denial was based, *id*. § 25.10(c), (d); and/or (iii) appeal to the FBI or a POC to attempt to demonstrate that his or her rights to possess a firearm have been restored, *id*. § 25.10(c). Any individual, including those whose firearm transaction has been "denied" or "delayed," may also submit an application to the FBI to allow it to maintain information about the individual—e.g., information that nullifies prohibitive or potentially prohibitive information in the individual's

5

criminal record—in a "Voluntary Appeal File" ("VAF") for the purpose of preventing future erroneous denials or extended delays of firearm transactions. *Id*. § 25.10(g). If the FBI approves an individual's VAF application, he or she will receive a "unique personal identification number" ("UPIN") to use in future transactions requiring a NICS background check.[2]

The GCA also requires FFLs to, among other things, identify each firearm imported or manufactured by the FFL by means of a serial number engraved, stamped, or cast on the receiver or frame of the weapon. 18 U.S.C. § 923(i). The GCA prohibits any person from possessing, transporting, shipping, or receiving, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered. 18 U.S.C. § 922(k).

### B. Factual and procedural background

Appellant, Eric S. Clark, is an individual residing in the State of Kansas. (ROA, Vol. I, at 15-16). On April 20, 2023, Clark filed a 95-page Complaint in the District of Kansas seeking to have "the entirety" of the GCA deemed unconstitutional based upon certain allegations that §§ 922(t), (g)(3), and (k) violate

---

[2] *See* Federal Bureau of Investigation, Firearm-Related Challenge (Appeal) and Voluntary Appeal File (VAF) (last visited September 20, 2024), https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics/national-instant-criminal-background-check-system-nics-appeals-vaf. The Court may take judicial notice of information on a governmental website. *Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882, 893 (10th Cir. 2020).

the Second Amendment. (ROA, Vol. I, at 13-15). Clark's Complaint is generally divided into seven sections: (1) Introduction; (2) "basis for relief sought," *i.e.* Clark's claims for relief; (3) "specific relief sought"; (4) jurisdiction and venue; (5) parties; (6) "factual allegations"; and (7) "discussion of applicable law." (ROA, Vol. I, at 8-102).

In the "Basis for Relief" section of the Complaint, Clark asserts that he is entitled to relief for the alleged violation of his Second Amendment rights under the Declaratory Judgment Act, 42 U.S.C. § 1983, and under "a private right of action for injunctive relief and equitable relief." (ROA, Vol. I, at 10-12). In support of this alleged private right of action, Clark cited and quoted *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ROA, Vol. I, at 11-12).

Attorney General Merrick Garland, the only defendant that has been served in this matter, filed a motion to dismiss. Defendant argued that the district court lacked subject matter jurisdiction with respect to any claims for monetary relief because such claims would be barred by sovereign immunity. (ROA, Vol. I, at 148-49). Defendant further argued that the district court lacked subject matter jurisdiction regarding any claims for equitable relief because Clark lacks standing to bring these claims. (ROA, Vol. I, at 157-161). Finally, Defendant argued that the specific provisions challenged by Clark are constitutional. (ROA, Vol. I, at 149-57; 161-171).

Clark filed a response arguing that he had standing for all of his claims, and that the challenged provisions were unlawful in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (ROA, Vol. I, at 149-57; 177-192). Clark did not respond to Defendant's argument that sovereign immunity bars any claims for monetary relief.  (*Id*.).

The district court granted Defendant's Motion to Dismiss, concluding that it lacked subject matter jurisdiction regarding any official-capacity claims because Clark had failed to identify a waiver of sovereign immunity that would allow him to seek monetary relief and because Clark lacked Article III standing to seek equitable relief. (ROA, Vol. I, at 213-20). The district court further concluded that any individual-capacity claims are not cognizable under *Bivens*. (ROA, Vol. I, at 220-24).

Thereafter, Clark sought to set aside the judgment in Defendant's favor. (ROA, Vol. I, at 227-55). The district denied Clark's motion to set aside. (ROA, Vol. I, at 344-55).

## SUMMARY OF ARGUMENT

The district court correctly held that Clark lacks Article III standing to pursue his broad challenge to the GCA in its entirety and his specific challenges to §§ 922(t), (g)(3), and (k). Indeed, Clark makes no attempt to establish standing for his broad challenge to the GCA in its entirety. But "standing is not dispensed in gross." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024).   Rather, Clark must independently demonstrate standing for each claim that he presses. *Id*. And Clark lacks standing to challenge §§ 922(t), (g)(3), and (k) because Clark's vague intentions to engage in proscribed conduct at some indeterminate point in the future are insufficient to establish a concrete injury that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (quotations omitted).

Accordingly, this Court should affirm the district court's dismissal of Clark's claims.

## ARGUMENT AND AUTHORITIES

### I.   Standard of Review

This Court reviews a district court's decision to grant a motion to dismiss de novo, accepting "a complaint's well-pleaded allegations as true, viewing all reasonable inferences in favor of the nonmoving party, and liberally constru[ing] the pleadings." *Young v. Colorado Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024) (quotations omitted). However, although Clark is *pro se*, the Court cannot undertake the "responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### II.   The district court correctly concluded that Clark lacks standing to seek equitable relief.

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2). "No principle is more fundamental to the judiciary's proper role in our system of government" than this constitutional limitation. *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).

"One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (quotations omitted). "The law of Art[icle] III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC*, 594 U.S. at 422 (quotation omitted); *see*

10

*also Valley Forge Christian Coll. v. Americans United for Separation of Church &
State, Inc.*, 454 U.S. 464, 476 (1982) (The doctrine of standing is "not merely a
troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit
which a party desires to have adjudicated; it is a part of the basic charter promulgated
by the Framers of the Constitution at Philadelphia in 1787."). Thus, faithful
adherence to Article III standing "helps safeguard the Judiciary's proper—and
properly limited—role in our constitutional system," *United States v. Texas*, 599
U.S. 670, 675 (2023), by ensuring that the federal courts do not become "forums for
the ventilation of public grievances," *Valley Forge Christian Coll.*, 454 U.S. at 473.

To establish standing at the pleading stage, a plaintiff must allege that (1) she
has "suffered an injury in fact, *i.e.*, a concrete and particularized, actual or imminent
invasion of a legally protected interest"; (2) the injury is "fairly traceable to the
challenged action of the defendant, and not the result of the independent action of
some third party not before the court"; and (3) it is "likely, as opposed to merely
speculative, that the injury will be redressed by a favorable decision." *Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations and quotation
omitted).

**A.    Clark lacks standing to pursue his claim that § 922(t)'s background
check requirement prevented his prior firearm purchases from
taking place in a timely manner.**

11

In his Complaint, Clark alleged that his Second Amendment rights were violated because he was "prevented from making [past] purchases in a timely manner solely" because of § 922(t)'s background check requirement. (ROA, Vol. I, at 9). On appeal, however, Clark argues that the district court "misapprehended" this claim because the central basis for his claim is for "time above 'zero time.'" (Appellant's brief, pg. 27). But when analyzing the sufficiency of a plaintiff's allegations, "the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. Therefore, extraneous arguments in an appellate brief may not be relied upon to circumvent pleading defects." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (citation omitted).

Therefore, the issue before this Court is whether the record plausibly shows that he suffered an ongoing injury in fact because he was "prevented from making [past] purchases *in a timely manner*" and whether that provides standing for the prospective relief that Clark seeks. The district court correctly concluded that it does not. (ROA, Vol. I, at 217-219).

Here, in his Complaint, Clark details four attempted purchases—two denials and two delays[3]:

---

[3] Clark alleges without any further factual details that he received "delay" responses on July 17, 2019, January 26, 2023, March 8, 2023, and April 5, 2023. (ROA, Vol.

12

| Date | Details |
|---|---|
| August 16, 2018 | The FFL initially received a "delayed" response. The FFL then received a follow-up "denied" response on August 21, 2018. (ROA, Vol. I, at 21-22). |
| September 20, 2018 | The FFL received a "delayed" response. Clark was informed that he could complete his purchase on September 26, 2018. Clark does not state that he was unable to complete his purchase at that time. (ROA, Vol. I, at 22). |
| June 15, 2021 | The FFL initially received a "denied" response. Clark sent a letter the following day appealing the "denied" response. The FBI granted Clark's appeal, updated his record, and informed him of the VAF, which would prevent any future erroneous denials. (ROA, Vol. I, at 19-20; 118-19). |
| September 15, 2021 | The FFL received a "delayed" response. Clark was informed that he could complete his purchase on September 21, 2021. Clark does not state that he was unable to complete his purchase at that time. (ROA, Vol. I, at 20). |

The record also shows that Clark has attempted five firearm purchases since the FBI updated his Kansas record after the June 15, 2021 denial, all of which were finalized and placed into "Proceed" within 24 hours. (ROA, Vol. I, at 175).

Here, the district court correctly concluded that Clark had failed to allege a concrete and particularized, actual or imminent invasion of a legally protected interest—his right to Second Amendment Right to "keep and bear arms." (ROA, Vol. I, at 217-18). Clark's background record has been updated and all of his purchases since June 5, 2021 have been finalized and proceeded within 24 hours.

---

I, at 23). Clark does not allege that he was unable to complete those purchases. The record seems to show that those purchases proceeded within 24 hours.

Thus, without an injury in fact, the Court lacks subject matter jurisdiction to award Clark the declaratory and injunctive relief he seeks.

Moreover, even if that weren't the case, the record shows that the harm alleged is self-imposed for the purpose of manufacturing standing. A plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Here, Clark was provided information regarding how to complete the VAF process, which allows purchasers like Plaintiff who have had their rights restored to avoid delays and denials during the background check process. (ROA, Vol. I, at 118). But the district court found that Clark "did not avail himself of the VAF option, which should have prevented future denials and delays of the kind [Clark] describes in the Complaint." (ROA, Vol. I, at 217). Apparently, Clark refused to complete this process and avoid any future delays out of a hypothetical fear that he would be giving up his "right of freedom of association." (ROA, Vol. I, at 236). As the district court found, this provides a separate basis to conclude that Clark lacks Article III standing. (ROA, Vol. I, at 217-18).

Thus, this Court should affirm the district court's conclusion that Clark failed to establish Article III standing with respect to his claim that § 922(t)'s background check requirement prevented him from completing past purchases in a timely manner.

14

**B.    Clark failed to establish standing to assert pre-enforcement challenges to 18 U.S.C. § 922(t), (g)(3), and (k).**

To establish the requisite injury in fact for pre-enforcement challenges, "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (alteration, emphasis, and quotation omitted). Instead, "to ensure that the alleged injury is not too speculative," a plaintiff who wishes to rely on threatened injury to establish standing must demonstrate that a concrete injury is "certainly impending." *Id*. (emphasis and quotation omitted). In this context, a "vague desire" or mere intent to violate the challenged statute does not suffice. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Instead, a plaintiff must demonstrate actual concrete, nonconjectural plans to engage in the relevant conduct and "a credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

However, standing for a pre-enforcement challenge "is not created by a declaration in court pleadings." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). Instead, a plaintiff must demonstrate—with "concrete plans" or other "objective evidence"—at least a "serious interest" in violating the challenged provision. *Id.* at 546 (quotation omitted). And where the record shows, for example, that a plaintiff "has taken no steps" in pursuit of that intention, the plaintiff cannot substantiate the requisite concrete intent. *See Mississippi State Democratic Party*, 529 at 545. That is, the plaintiff's actual actions and steps taken towards engaging in the relevant conduct will inform the court's analysis.

For example, in *Montana Shooting Sports Association v. Holder*, the Ninth Circuit found the requisite serious intention to violate federal laws criminalizing the manufacturing of firearms and ammunition without a government-issued license because the plaintiff had "not merely alleged a vague desire to manufacture and sell unlicensed firearms if he [won the] lawsuit, but ha[d] made specific allegations substantiating [that] claim," including that he "ha[d] a background in running his own shooting range equipment manufacturing business, ha[d] identified supplier for . . . the component parts of the [firearm], ha[d] design plans for the firearm ready to load into manufacturing equipment, and ha[d] identified hundreds of customers who ha[d] ordered the [firearm] at his asking price." 727 F.3d 975, 978–80 (9th Cir. 2013).

By contrast, the Fifth Circuit more recently held that certain individual plaintiffs lacked the necessary "serious intention" to challenge the National Firearms Act's requirement that they pay a tax and seek approval from the government before making a suppressor where the individual plaintiffs alleged by declaration that they had intended to "personally manufacture a firearm suppressor in [their] home from basic materials." *Paxton v. Dettelbach*, 105 F.4th 708, 712 (5th Cir. 2024). Plaintiffs argued that they had standing on the theory that they would have done so but for the NFA's tax and approval requirement. The Fifth Circuit concluded, however, that the individual Plaintiffs in *Paxton* lacked standing because they had only expressed

"vague intentions to make a [suppressor] at some indeterminate point in the future." *Id*. at 714. This expressed intention stood in "stark contrast" to those in *Montana Shooting Sports Association* and other cases where the plaintiffs had shown concrete details concerning their intended conduct, including preparatory steps towards that conduct. *Id*.

To be clear, this requirement that a plaintiff demonstrate more than a vague intent to engage in conduct at some indeterminate point in the future does not overstep the Supreme Court's admonition that "it is not necessary" for a party to "expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Rather, it is an acknowledgement that "the decision to for[]go" taking lawful preliminary steps that demonstrate a concrete intent to imminently violate the statute cannot not "be excused on the ground that" it would "expose[] [plaintiffs] to possible prosecution." *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 389 (5th Cir. 2018).

Here, like the plaintiffs in *Paxton*, Clark's attempt to demonstrate the requisite intent and "certainly impending" injury through his Complaint and affidavit falls short of the mark. Instead, as demonstrated below, the factual allegations expressed by Clark reflect a "vague desire" or mere intent to violate the challenged statutes.

With respect to Clark's challenge to § 922(t)'s background check requirement, Clark merely alleges a vague intent to "engage in future purchases of handguns and appropriate associated ammunition from out of state private parties . . . after the date of [his] complaint." (ROA, Vol I, at 18). But Clark provides absolutely no discernible details concerning these "future purchases" other than that he would attempt purchases "more frequently" in the absence of § 922(t). (ROA, Vol I, at 24). Clark has not alleged where he intends to make these "purchases." Clark does not identify the firearm(s) he intends to purchase. Clark does not identify *when* he intends to make these "future" purchases, other than "after the date of [his] complaint." Clark does not allege any specific present intent to immediately make any firearm purchases. And Clark does not plausibly allege that § 922(t) would cause him any cognizable injury if he were to make any such purchase, given his recent favorable background checks within 24 hours and his ongoing option to avoid any future erroneous denials through the VAF process discussed above. Clark's vague allegation that he intends to purchase a firearm in the future is no different than the declarations in *Paxton* that the Fifth Circuit held fell "well short" of the mark. *Paxton*, 105 F.4th at 715.

With respect to his challenge to § 922(g)(3)'s prohibition on users of controlled substances possessing firearms, Clark expresses vague, someday intentions to "use marijuana for potential pain relief in the future" in some state

18

where the use of marijuana is lawful under state law. (ROA, Vol I, at 18, 24). Clark does not allege that he has chosen a state in which he intends to procure marijuana. Clark does not allege that he has procured or attempted to procure any marijuana in a state where it is legal to purchase under state law. If the lawful use of marijuana in this unidentified state is limited to medicinal purposes, Clark does not allege that he has taken any steps to obtain a medical marijuana license. Clark does not allege that he intends to transport a firearm to this unidentified state or that he has taken steps to be permitted to possess his firearm in that state. Clark does not allege that he intends to possess a firearm during his purchase and consumption of marijuana on this unidentified future occasion. And Clark does not allege that he has procured or made a plan for procuring a location to consume the marijuana that he intends to someday purchase.

With respect to his challenge to § 922(k)'s serial number requirement, Clark merely states in a rote manner that he intends to restore "a rusty firearm that can be purchased outside of [Kansas]" that will for some unknown reason require the alteration or obliteration of that "rusty firearm's" serial number to make it safe for use. (ROA, Vol I, at 25). But he yet again fails to make any specific allegations concerning the "rusty firearm" purchase and the need to alter or obliterate its serial number. Clark does not allege that he has purchased this unidentified "rusty firearm," a step that carries no discernable risk of criminal liability. Clark does not

19

even allege that he has *identified* that supposed "rusty firearm," assessed its condition, and determined that its *actual* physical condition requires the alteration or obliteration of its serial number.

In sum, Clark's vague intentions to someday engage in proscribed conduct at some indeterminate point in the future are insufficient to establish Article III standing to bring his pre-enforcement challenges. Therefore, this Court should affirm the district court's decision.

### C.   Clark waived standing for his broad challenge to the Gun Control Act of 1968.

The Supreme Court has instructed, time and again, that "standing is not dispensed in gross. That is, plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (citations and quotations omitted). Moreover, arguments in favor of standing, like all arguments in favor of jurisdiction, can be waived or forfeited by failing to raise them in briefing. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 547 (10th Cir. 2016); *see also Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012) ("Arguments not clearly made in a party's opening brief are deemed waived.").

Here, Clark states in his jurisdictional statement that this appeal arises out of his lawsuit "challenging the constitutionality of 18 U.S.C. § 922 in its entirety." (Appellant's brief, pg. 1). Clark further states in his conclusion that this Court should

remand this matter "with instructions that CLARK has standing to proceed on all of the claims in the complaint." (Appellant's brief, pg. 37). Yet, Clark does not raise in his brief any potential basis for standing to challenge the GCA as a whole. Given this failure, this Court should hold that, like some of the plaintiffs in *Colorado Outfitters*, Clark has waived any claim that he has standing to challenge the GCA as a whole. 823 F.3d 546-47. Alternatively, this court should hold that Clark lacks standing to bring his broad constitutional challenge to "§ 922 in its entirety."[4]

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

---

[4] Clark's opening brief does not take issue with the district court's holding that he is not entitled to any monetary relief. This Court could affirm that aspect of the judgment on the basis that Clark waived any challenge to it. *See Toevs*, 685 F.3d at 911. In any event, as the district court correctly recognized, any official-capacity claims for monetary relief would be barred by sovereign immunity and any individual-capacity claims would not be cognizable under *Bivens*. (ROA, Vol. I, at 213-215, 222-224).

Respectfully Submitted,

KATE E. BRUBACHER
United States Attorney
District of Kansas

*s/ Brian E. Vanorsby*
Brian E. Vanorsby, KS #27606
Assistant United States Attorney
United States Attorney's Office
District of Kansas
301 N. Main, Suite 1200
Wichita, Kansas 67202
Office: 316.269.6481 Fax: 316.269.6484
E-mail: brian.vanorsby@usdoj.gov
*Attorneys for Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 4,474 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), as calculated by the word-counting function of Microsoft Word for Microsoft 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14- point Times New Roman, using Microsoft Word for Microsoft 365.

Date: October 3, 2024                      */s/ Brian E. Vanorsby*
                                           Brian E. Vanorsby

## CERTIFICATE OF SERVICE

I certify that on October 3, 2024, the foregoing was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the Court's CM/ECF system. I further certify that I served a copy of Appellee's Brief upon the pro se Appellant, Eric S. Clark, at eric@whitestonepublishing.org, and mailed one copy via United States mail, to Eric S. Clark, 1430 Highway K 273, Williamsburg, Kansas 66095. I also certify that I will cause seven hard copies to be mailed to the Clerk's Office in accordance with Tenth Circuit Rule 31.5.

Date: October 3, 2024                    */s/ Brian E. Vanorsby*
                                         Brian E. Vanorsby