No. 24-3088

United States Court of Appeals
for the Tenth Circuit

Eric S. Clark
Plaintiff-Appellant

v.

**Attorney General of the United States of America
Merrick Garland, et al.**
Defendants-Appellees

Appeal from the U.S. District Court
for the District of Kansas
The Honorable Julie A. Robinson, United States District Judge
( 23-cv-02170-JAR-RES )

**REPLY OF APPELLANT**

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………….. ii

HOUSEKEEPING: ……………………………………………….. 1

ARGUMENTS IN REPLY:

   1. GCA **as a whole** (i.e., 18 U.S.C. § 922 in its entirety) ………….. 1

   2. limiting review of equity claim *exclusively* to *Bivens* …………..… 3

   3. misapprehending the basis of a claim to a
       Second Amendment violation - concerning § 922 (t) ……..… 4

   4. credible threat of enforcement of § 922(g)(3) and § 922 (k) ………. 12

# TABLE OF AUTHORITIES

## FEDERAL SUPREME COURT CASES

*Bantam Books, Inc.* v. *Sullivan,*
    372 U. S. 58 (1963)   ………………………….. 3

*Bell v. Hood,*
    327 U.S. 678 (1946)   ………………………….. 2, 4

*Ex parte Young,*
    209 U.S. 123 (1908)   ………………………….. 2

*Massachusetts v. EPA,*
    549 U.S. 497, 526 (2009) ………………………….. 4

## FEDERAL TENTH CIRCUIT

*United States v. Sup. Ct. of New Mexico,*
    839 F.3d 888 (10th Cir. 2016)   …………………….. 12

**HOUSEKEEPING:**

Appellant will be identified as "CLARK" and Appellee as "GARLAND".

The BRIEF OF APPELLANT will be referenced as "CLARK BRIEF" and page references are to the electronically filed pages of Document 12 in Circuit Court docket, not to page numbers supplied within the brief itself.

Likewise, the BRIEF OF APPELLEE will be referenced as "GARLAND BRIEF" and page references are to the electronically filed pages of Document 23 in the Circuit Court docket, not to page numbers supplied within the brief itself.

Documents in the District Court docket record will be cited to by their electronically filed "ECF" numbers and pages, e.g., ECF 1 at 3 for the third page of the complaint.

**ARGUMENTS IN REPLY:**

1. **GCA as a whole (i.e., 18 U.S.C. § 922 in its entirety)**

   The GARLAND BRIEF framed an issue of "Whether the district court correctly concluded that Clark lacks standing to obtain equitable relief based on his challenge to the Gun Control Act of 1968." (GARLAND BRIEF at 9)

   Reference is made to a "broad challenge to the GCA in its entirety" (GARLAND BRIEF at 16) and it is later asserted that "Clark has waived any claim that he has standing to challenge the GCA **as a whole**." (GARLAND BRIEF at 28) (emphasis added)

   CLARK's claim to error concerning equitable relief (i.e., error by treating *Bivens* as an exclusive avenue to reach equity) is not the only issue on appeal, but

1

it is a sufficient ground for reversal and; reversal would dispose of this additional issue as discussed below.

While CLARK does challenge the entirety of 18 U.S.C. §922 in the district court, that challenge is not limited to "the GCA" but encompasses any acts, or portions of acts, which provide authority for the currently extant provisions contained within section 922 of Title 18. The claim to declaratory relief concerning the entirety of 18 U.S.C. § 922 is not before the court on appeal because the district court ordered the case dismissed in its entirety without prejudice for lack of subject matter jurisdiction. See order ECF 22 at 18 and judgment ECF 23 at 1. That "without prejudice" reflects that the merits concerning the entirety of 18 U.S.C. § 922 was not reached by the district court and "as a whole" would be a proper claim to pursue *on remand* for two reasons: a) standing would exist as derivative of any one of the subsection claims and; regardless of that, b) reversal of error on the equitable claim under *Bell v. Hood & Ex Parte Young* would require the district court to reach the Declaratory Judgment Act claims to declaratory relief which includes the "as a whole" declaration.

Nonetheless, it was argued that "Clark waived standing for his broad challenge to the Gun Control Act of 1968." (GARLAND BRIEF at 27) In the CLARK BRIEF, it was argued that

> "by errantly addressing CLARK's private right of action *exclusively* as a "*Bivens* claim" as opposed to a type of private right in the broader vein of *Bell v. Hood*, the district court erroneously concluded that "without a cognizable claim under § 1983 or *Bivens*, Plaintiff could not assert a claim under the Declaratory Judgment Act." (ECF 38 at 1-2) That was

2

clearly erroneous because **with a cognizable unconstitutional conditions (or third party coercion) claim** (such as under *Bantam Books*), **that such claim provides standing and would also allow for the additional assertion of claims under the Declaratory Judgment Act as pled in the complaint.**" (CLARK BRIEF at 31-32) (emphasis added)

Thus, though not waived, this "as a whole" challenge is not before this court – being a derivative of the error of failure to properly address the equity claims, hence irrelevant to the appeal because the merits analysis for the declaratory judgment concerning that issue should be addressed on remand upon finding standing for any one of CLARK's equitable claims (necessitating reversal of the dismissal). Upon reversal, CLARK would have standing to pursue declaratory relief concerning "as a whole" not only because of the Declaratory Judgment Act but because when the greater (broader) supplies the *sole* basis of authority for the lesser (narrower), then standing for *any* lesser necessarily provides standing to challenge the constitutional validity of the authority of that greater: for if the authority of the greater is without legitimate basis (i.e.., unconstitutional) then any lesser is likewise without legitimate basis to justify any injury caused by the lesser.

## 2.    limiting review of equity claim *exclusively* to *Bivens*

The only response to this issue which was raised by the CLARK BRIEF appears to be a lone paragraph of the GARLAND BRIEF:

> "In the "Basis for Relief" section of the Complaint, Clark asserts that he is entitled to relief for the alleged violation of his Second Amendment rights under the Declaratory Judgment Act, 42 U.S.C. § 1983, and under "a private right of action for injunctive relief and equitable relief." (ROA, Vol. I, at 10-12). In support of this alleged private right of action, Clark

3

cited and quoted *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ROA, Vol. I, at 11-12)." (GARLAND BRIEF at 14)

While it is true that *Bivens* was "cited and quoted", that was in the context of *an example* of *equitable relief* and the GARLAND BRIEF did not address the cite to *Bell v. Hood,* 327 U.S. 678, 684 (1946) in the complaint (ECF 1 at 5) which was contained in the complaint immediately after the quote of *Bivens*. The GARLAND BRIEF did not refute that the only avenue of relief for the equitable claim addressed by the district court was "under *Bivens*". Nor did the GARLAND BRIEF deny that *Bell v. Hood* was also cited and quoted in the complaint. Regardless that no claim fits under *Bivens,* the equity claims are proper under *Bell*. This failure to meaningfully refute the primary error of the district court should be dispositive of the reversible error raised in ISSUE 1 of the CLARK BRIEF. And unavailability of one part of the requested relief, such as monetary damages, does not mean that no relief can be granted. Even if some of the relief sought, such as monetary relief, is unavailable, that relief can be obtained "to some extent" is all that is required for standing. See *Massachusetts v. EPA*, 549 U.S. 497, 526 (2009).

### 3.    misapprehending the basis of a claim to a Second Amendment violation - concerning § 922 (t)

It was asserted that

> "Clark alleges without any further factual details that he received "delay" responses on July 17, 2019, January 26, 2023, March 8, 2023, and April 5, 2023. (ROA, Vol. I, at 23). Clark does not allege that he was **unable to**

4

**complete those purchases**. The record seems to show that those purchases proceeded within 24 hours." (GARLAND BRIEF at 19-20, footnote 3) (emphasis added)

This reflects the same misapprehension as the district court by indicating the claim was apprehended to be prohibiting purchase rather than delay, i.e., extending the length of time needed to make a purchase.

Asserting lack of "further factual details" does not negated that factual details were alleged in the complaint about time delay and, under the motion to dismiss standard, those are to be accepted as true and not be misapprehended. And, that "Clark does not allege that he was unable to complete those purchases." does not preclude drawing reasonable inference that purchases were significantly delayed. The record cited to in that footnote 3 i.e., (ROA, Vol. I, at 23), was located within paragraph 29 of the complaint which more fully stated:

> "CLARK has previously been denied several times and delayed numerous times from being able to purchase and transfer firearms at various FFLs, including other delays of over 180 days, because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) including on 07/17/2019, 01/26/2023, and 3/8/2023, 4/5/2023, each time Delayed. This is not an all inclusive list but exemplary of the situation CLARK faces in relation to burden on his right to keep and bear arms because of the operation of the NICS background check system and requirements in federal law to apply that actions to CLARK's attempts to purchase or transfer a firearm." (ECF 1 at 16)

That same paragraph of the complaint also asserted that the factual allegations that those specific attempts to purchase firearms were "not an all inclusive list" and

5

that CLARK had been "delayed numerous times from being able to purchase and transfer firearms at various FFLs, including other delays of over 180 days". Not only must the "over 180 days" be accepted as true for purposes of a motion to dismiss, it is also a reasonable inference to draw that the "over 180 days" can be affected by the practical realities of being able to make a purchase (more on that below – especially quoting from CLARK's response (ECF 13) to the motion to dismiss (ECF 12).

As to what the record "seems to show", as mentioned in that footnote 3, is obviously a subjective statement and where there is room for subjective inferences, a motion to dismiss should draw such inferences toward the non-movant. In that light, even if taken as true that "those purchases proceeded within 24 hours", that does not limit the time delay in exercising the right to 24 hours. That is, it would not be a reasonable inference that a purchase could be made immediately upon the later issuance of a "proceed" response to the FFL. The defendant seemed fail to grasp that practical reality in the motion to dismiss where it was asserted "Plaintiff claims waiting periods of "over 180 days" (Doc. 1, ¶ 29); such lengthy delays are not possible as regulations require delayed transactions to purge from NICS before day 90. *See* 28 CFR 25.9." ECF 12 at 19. CLARK responded to that false claim that "lengthy delays are not possible" in his response to the motion to dismiss (ECF 13 at 5-6) as follows:

> "This claim to "not possible" is simply incorrect in practice as it leaves out that there is also a thirty day limit on attempting to transfer before requiring another background check. CLARK purchased a firearm and was

6

delayed or denied multiple times and was unable to make the over two hour round trip to the FFL to attempt to receive his firearm again before thirty days elapsed. That inability to complete the transfer within thirty days prompted the FFL to start over, i.e., to follow the requirement of law that another check be run before transfer could lawfully occur . . . and then CLARK was delayed similarly again and again. This repeating cycle can continue nearly indefinitely if a person is unable to make frequent visits to the FFL. Perhaps there are those live in a city nearby to an FFL for whom the trip to the FFL does not require planning and significant time and resources for travel. The FFL in Lyndon, Kansas had the firearm CLARK sought when other FFLs may not have. CLARK did not contact every FFL to see which FFLs had the desired firearm and CLARK chose to buy it from an FFL who is fairly well known to CLARK as CLARK has been to his family home on a number of occasions. And once purchased, it was not reasonable for CLARK to receive the purchased firearm from some other FFL. The motion to dismiss also asserted that 'any delay over the third business delay would be due to either the FFL's choice not to transfer a firearm which had not received a "Proceed" response, or any applicable state law extending initial delay of a transfer' ECF 12 at 20. This is a false dichotomy as the delay could be due to practical reasons such as what was explained above associated with the thirty day limit. That thirty day limit was not mentioned by the offered dichotomy. The motion to dismiss stated that "since June 15, 2021, and up through April 5, 2023, Plaintiff's NICS transactions have all been proceeded within 24 hours by the NICS Section." ECF 12 at 20. This fails to state that CLARK has been delayed while at the FFL or take into account that once CLARK has returned home without the firearm, even if proceeded immediately after CLARK returned home, CLARK must arrange time and resource to attempt to make another trip. Perhaps the government is arguing that it is mandatory to place a new trip to the FFL at the top of one's priority list and budget considerations if one wishes to retain the right to keep and bear arms. Additionally, that thirty day window of time to complete a transfer after a "Proceed" response does not alleviate the burden of other decisions CLARK must make with the uncertainty of being "Denied" yet again which can cause forfeiture of sums on money by merely receiving a "Denied" response caused by implementation of 18 U.S.C. 922(t) and that is so even if the response is later amended to a "Proceed". See factual allegation in the Complaint at ¶32."

This discussion above is relevantly material in that the district court focused exclusively (indicative of misapprehension) on being *completely prohibited* from making purchases as a source for the Second Amendment claims under 922(t) rather than the source of injury being *time delay* in exercising the Second Amendment right. That said, if proper inferences are drawn, the GARLAND BRIEF got it correct insofar as it stated,

> "the issue before this Court is whether the record plausibly shows that he suffered an ongoing injury in fact because he was "prevented from making [past] purchases *in a timely manner*" and whether that provides standing for the prospective relief that Clark seeks." (GARLAND BRIEF at 19) (emphasis in original)

That *"in a timely manner"* is the key descriptor such that even if CLARK did complete a purchase, if the purchase was not timely then that lack of timeliness is injury in that it *delays exercise of the right*, i.e., it delays keeping and bearing of the purchased firearm. The chart drawn up in the GARLAND BRIEF at page 20 supports that the timely purchases could not be had (i.e., §922(t) prevented timely purchase) because of time delay in transacting the purchases as pled.

A questionable claim was asserted that "Clark's background record has been updated and all of his purchases since June 5, 2021 have been finalized and proceeded within 24 hours." (GARLAND BRIEF at 20) See CLARK's response to the motion to dismiss under a section titled "VI. Either the Affidavit or the NICS Audit Log is not a reliable source of information" (ECF 13 at 15-16).

It was asserted that "Clark provides absolutely no discernible details concerning these "future purchases" other than that he would attempt purchases "more frequently" in the absence of § 922(t)." (GARLAND BRIEF at 25) It is difficult to have detail of a purchase that has yet to be attempted, but some more detail might be gleaned by an attempt which CLARK made after the district court dismissal. Those details were brought to the district court's attention in a motion to set aside. See ECF 25 at 8-9:

> "Based on the court's order of dismissal holding there to be no credible ongoing threat of enforcement of 922(t) to cause any more delay for Plaintiff, Plaintiff accepted that on face value and visited an FFL on January 17, 2024 and attempted to Purchase a firearm. Plaintiff now has additional facts from January 17, 2024 that he could insert into the Complaint if provided leave of Court to do so. Those factual allegations would be the following:
>
>> a) "On January 17, 2024, CLARK sought to purchase a firearm and was that purchase was time delayed for well over an hour because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473 used in connection with that attempted purchase, under the heading of "The response initially provided by NICS or the appropriate State agency was:", the FFL checked the checkbox labeled "Delayed" after receiving an acknowledgement from the NICS system. The FFL then refused to sell any firearm to CLARK because of that information and the FFL also, by the FFL writing "1-23-24" on the same Form 4473, indicated that CLARK could purchase the firearm on or after "1-23-24" (approximately four and a half days later). For some time period after the FFL notified Plaintiff that the FFL would not sell Plaintiff a firearm, Plaintiff was unable to exercise his right to keep and bear arms for self defense for at least an hour. The travel time involved in attempting to make this

      purchase of a firearm consumed about 2 hours of time just for the round trip from Plaintiff's home to the FFL and back."

      b)  "On 1/17/2024, Defendant UGA#7 used the NICS system to provide "delayed" status information for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm."

This reflects substantial detail concerning *future* attempts to purchase a firearm from an FFL (*future* in regard to when the district court was evaluating standing for injunctive relief).

    Mention was made that "given his recent favorable background checks **within 24 hours** and his ongoing option to avoid any future erroneous denials through the VAF process discussed above." (GARLAND BRIEF at 25) (emphasis added)

    This is apparently an acknowledgement of continuing delays and the mention of an "option" presents a false dichotomy for those who do not want to be associated with a particular government list(or file) in order to exercise their fundamental rights, including freedom of association with others who do not want to be on a particular government list. Apart from that, there are certainly other valid reasons for not voluntarily seeking to be placed onto a government list such as the VAF. What is relevant (as it deviates from the motion to dismiss *standard*) is that it is *not* a reasonable inference to draw that the non-movant wanted to be on the VAF and just failed to make that happen. If any inference is to be drawn at all concerning the VAF, it would be that CLARK had valid reason not to be on the VAF. In response to the motion to dismiss, CLARK stated, "There are certainly

valid reasons for not voluntarily seeking to be placed onto a government list such as the VAF." (ECF 13 at 15)

It was argued, "Apparently, Clark refused to complete this process and avoid any future delays out of a hypothetical fear that he would be giving up his "right of freedom of association." (ROA, Vol. I, at 236)." (GARLAND BRIEF at 21) First, there is no sound basis for characterizing exercise of an enumerated fundamental constitutional right to not associate as being equivalent to "refused" based on "hypothetical fear". See section titled "Voluntary Appeal File (VAF)" in CLARK's motion to set aside judgment (ECF 25 at 9-12). There can certainly be valid reasons not to associate that have nothing to do with any type of fear, hypothetical or otherwise.

Mention of **"within 24 hours"** (GARLAND BRIEF at 25) appears to be an attempt to argue that 24 hours is an acceptable delay that would preclude any claim of time delay under the Second Amendment but there is no authority that has held that. That would be similar to saying there can be no claim for medical malpractice because a cancer patient that was turned away by a doctor for 24 hours when seeking treatment did not make a new appointment with that doctor to obtain treatment immediately after the 24 hours. And even if the patient promptly returned after 24 hours, what if the doctor turned the patient away for another 24 hours? And that same cycle of events happened again, and again? After someone seeking to purchase a firearm from an FFL has been delayed 24 hours, even if promptly scheduling a new visit to the FFL, the 24 hour NICS delay is not a true

11

measure of the actual delay caused in exercise of the right. Of course, the important aspect for this claim to error is that it speaks to *time delay in being able to purchase a firearm*, not a misapprehension of the claim as *prohibiting purchase of a firearm* altogether. This issue was squarely raised to the district court as issue 2 of a motion to set aside judgment (See ECF 25 at ISSUE 2).

### 4.     credible threat of enforcement of § 922(g)(3) and § 922 (k)

In the opening brief, CLARK asserted that

> "a *credible threat* of enforcement can be shown where the statute at issue prohibits the activity the plaintiff wishes to engage in and the potential for enforcement has not been disavowed. See *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016)." (CLARK BRIEF at 44)

The GARLAND BRIEF did not disavow potential enforcement against CLARK, thus, the record on appeal, just as in the district court, does not evidence that GARLAND has disavowed potential enforcement against CLARK.

As to 922(g)(3), in response to the allegations of CLARK, the GARLAND BRIEF mainly focused on what CLARK did *not* allege:

> "Clark does not allege that he has chosen a state in which he intends to procure marijuana. Clark does not allege that he has procured or attempted to procure any marijuana in a state where it is legal to purchase under state law. If the lawful use of marijuana in this unidentified state is limited to medicinal purposes, Clark does not allege that he has taken any steps to obtain a medical marijuana license. Clark does not allege that he intends to transport a firearm to this unidentified state or that he has taken steps to be permitted to possess his firearm in that state. Clark does not allege that he intends to possess a firearm during his purchase and consumption of marijuana on this unidentified future occasion. And Clark does not allege

that he has procured or made a plan for procuring a location to consume the marijuana that he intends to someday purchase."
(GARLAND BRIEF at 26)

This plethora of things would extend far beyond the factual allegations in a complaint sufficient for meeting the plausibility standard for pleading as that standard presupposes drawing reasonable inferences in favor of the non-movant.

As to 922(k), in response to the allegations of CLARK, it was remarked that there was "some unknown reason" (GARLAND BRIEF at 26) but the reason is not unknown and was clearly identified as "in order to safely use the firearm for the purpose of self defense in his home." See Complaint (ECF 1) at page 18, ¶35. When firearms are rusted enough to be considered in need of restoration, they are generally considered to be in an unsafe operating condition.

It was also remarked that "Clark does not allege that he has purchased this unidentified "rusty firearm," a step that carries no discernable risk of criminal liability." (GARLAND BRIEF at 26)

This fails to account for the risk of criminal liability that is possible if the rusty firearm is discovered to already have an altered or obliterated serial number. That is a sound reason not to identify the specifics of the firearm to be restored at this point in the proceedings.

It was mentioned that "the plaintiff's actual actions and steps taken towards engaging in the relevant conduct will inform the court's analysis." (GOV BRIEF at 22) CLARK agrees with this. And the complaint, under a section titled

13

as "18 U.S.C. § 922(k)", offered that

> "[b]ut for the existence of 18 U.S.C. § 922(k), CLARK would restore a rusty firearm that can be purchased outside of CLARK's State of residence that will require CLARK to remove or alter or obliterate the rusty firearm's manufacturer's serial number in order to safely use the firearm for the purpose of self defense in his home. **CLARK has done similar restoration work in the past** but, without revealing the details of the past conduct, seeks to do so similarly again." (ECF 1 at 93-94) (emphasis added)

That allegation of past restoration conduct alleged in the complaint should also "inform the court's analysis".

## CERTIFICATE OF COMPLIANCE

### with required PRIVACY redactions.

Appellant hereby certifies that:

All required privacy redactions have been made to the Appellant's reply brief.

                                    Eric S. Clark ( pro se )
                                    1430 Highway K 273
                                    Williamsburg, Kansas 66095
                                    Phone: (785) 214-8904

## CERTIFICATE OF COMPLIANCE

### with Type-Volume Limit
### and with Typeface and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)(B) because this brief contains **4,051 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 (12.0.6787.5000) SP3 MSO (12.0.6607.1000) in 14 point Times New Roman.

                                    Eric S. Clark ( pro se )
                                    1430 Highway K 273
                                    Williamsburg, Kansas 66095
                                    Phone: (785) 214-8904

FROM:

Eric S. Clark
1430 Dane Ave
Williamsburg, KS 66095

TO:

**Office of the Clerk,**
United States Circuit Court for the Tenth District
Byron White Court House
**1823 Stout Street**
**Denver, CO 80257**



USPS TRACKING #
9114 9022 0078 9451 6530 57