IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| ERIC S. CLARK, | ) PETITION FOR |
| | ) HEARING BY PANEL |
| Plaintiff-Appellant, | )     AND |
| v. | ) **HEARING *EN BANC*** |
| | ) |
| MERRICK GARLAND, et al. | )  CASE NO. 24-3088 |
| | ) (District of Kansas) |
| Defendants-Appellees. | ) (Case No. 23-cv-02170-JAR-RES ) |

**SUGGESTION OF *EN BANC* REVIEW**

The panel decision conflicts with decisions of the United States Supreme Court

and conflicts with decisions of the Tenth Circuit concerning application of

pleading standards for standing determinations and; consideration by the full court

is therefore necessary to secure and maintain uniformity of the court's decisions.

   The panel decision conflicts with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

*Steffel v. Thompson*, 415 U.S. 452 (1974), *Susan B. Anthony List v. Driehaus*,

573 U.S. 149 (2014), and conflicts with this court's precedent concerning drawing

all reasonable inferences in favor of the plaintiff including *Brown v. City of Tulsa*,

Tenth Circuit Appeal No. 23-5133(January 7, 2025).

**QUESTION PRESENTED for focus of Hearing en banc:**

   Did the panel err in affirming dismissal of the complaint for lack of standing

to seek injunctive relief for ongoing injury?

1

Opposing party counsel's position was indicted to Appellant as "no position unless the Court orders such a response".

## REASONS FOR GRANTING REHEARING

### ( for panel  hearing  and  en banc hearing)

I.    FAILURE TO DRAW REASONABLE INFERENCE

II.   FAILURE TO RECOGNIZE CHILLING EFFECT AS A CONCRETE AND PARTICULARIZED  ONGOING  INJURY

III.  IMPROPER ANALYSIS PRESUMPTION

## ARGUMENT

### *REFERENCE MATERIAL IN THE RECORD*

The following factual allegation portions of the complaint (ECF 1) are provided below for ease of reference.

> "CLARK has been chilled from attempting future purchases of firearms at *some* FFLs who charge a fee for any NICS check that results in providing an acknowledgement of "Denied" to the FFL.
>
> The facts alleged herein describe past enforcements which not only violated CLARK's right to keep and bear arms in the past but *also* had some *chilling effect* on his exercise of his constitutional right to keep and bear arms"
>
> (ECF 1 at 6)(emphasis added)

and

> "18. CLARK sought to purchase a firearm at an FFL on 06/15/2021 (See Exhibit C) and was denied because of the

2

NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473 used in connection with that attempted purchase, under the heading of "The response initially provided by NICS or the appropriate State agency was:", the FFL checked the checkbox labeled "Denied" after receiving an acknowledgement from the NICS system. The FFL then refused to sell any firearm to CLARK because of that information.

19. On 6/15/2021, Defendant UGA#1 used the NICS system to provide "denied" status information for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

20. CLARK sent a letter dated June 16, 2021 to the FBI appealing that "Denied" determination from the NICS system as then reflected on the Form 4473by the FFL.

21. CLARK received a letter from the FBI dated August 27, 2021 in response to that appeal (See Exhibit D) which contained in part:

"we have been able to determine you are eligible to possess or receive a firearm. Your Kansas record has been updated. The FBI's Criminal Justice Information Services (CJIS) Division Firearm-Related Challenge Certificate is enclosed.You must take this original certificate to the Federal Firearms Licensee (FFL) who initiated your background check through the National Instant Criminal Background Check System (NICS) to complete your transaction. If more than 30 days have elapsed since the initial background check, the FFL must recheck the NICS before allowing the firearm transfer."

And the certificate referenced in that letter contained in part, "Mr. Clark is eligible to possess or receive a firearm" and "INITIATION DATE: 2021-06-15".

22. CLARK then sought to purchase the same firearm at the same FFL on 09/15/2021 as he had on 06/15/2021 and was that purchase was delayed (See Exhibit E) because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473 used in connection with that attempted purchase, under the heading of "The response initially provided by NICS or the appropriate State agency was:", the FFL checked the checkbox labeled Delayed" after receiving an acknowledgement from the NICS system. The FFL then refused to sell any firearm to CLARK because of that information but the FFL also indicated that CLARK could purchase the firearm on or after 09/21/2021 (which was also reflected on the Form 4473 by the FFL).

23. On 9/21/2021, Defendant UGA#2 used the NICS system to provide "delayed" status information for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

24. On an earlier occasion, CLARK sought to purchase the a firearm on 08/16/2018 (See Exhibit F) and was that purchase was delayed because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473 used in connection with that attempted purchase, under the heading of "The response initially provided by NICS or the appropriate State agency was:", the FFL checked the checkbox labeled "Delayed" after receiving an acknowledgement from the NICS system. The FFL then refused to sell any firearm to CLARK because of that information but the FFL also indicated that CLARK could purchase the firearm

on or after 08/22/2018 (which was also reflected on the Form 4473 by the FFL). But then, the "Delayed" was changed to "Denied" on 08/21/2018 and CLARK was informed of the new denial status by the FFL. Then, presumably, the status was changed again to "Proceed" at an unknown time – "presumed" because after inquiry concerning the denial on 08/22/2018 regarding NTN 100PN8CT4, CLARK received a response from the FBI dated 08/24/2018 (See Exhibit G) indicating they had no information concerning the transaction and also stated:

"Please be advised, the NICS is required to destroy all proceeded transactions within 24 hours of providing the final status to the Federal Firearms Licensee. Likewise, the NICS is required to destroy delayed transactions within 88 days from the date the transaction was initiated. It is possible your transaction fits in one of these two categories."

As there was no information available and it had not yet been 88 days, it is reasonable to presume that the status was changed to "Proceed".

After this, on 09/20/2018, (See Exhibit H) CLARK again sought to purchase the same firearm as was attempted on 08/16/2018 and that purchase was delayed because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473 used in connection with that attempted purchase, under the heading of "The response initially provided by NICS or the appropriate

State agency was:", the FFL checked the checkbox labeled "Delayed" after receiving an acknowledgement from the NICS system. The FFL then refused to sell any firearm to CLARK but the FFL also indicated that CLARK could purchase the firearm on or after 09/26/2018 (which was also reflected on the Form 4473 by the FFL).

5

25. On 08/16/2018, Defendant UGA#3 used the NICS system to provide a "delayed" status for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

26. On 08/21/2018, Defendant UGA#4 used the NICS system to provide a "denied" status for the NICS background check previously requested by the FFL on 08/16/2019.

27. Sometime between 08/21/2018 and 8/24/2018, Defendant UGA#5 used the NICS system to provide a "proceed" status for the NICS background check which had been previously requested by the FFL on 08/16/2018.

28. On 09/20/2018, Defendant UGA#6 used the NICS system to provide a "delayed" status for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

29. CLARK has previously been denied several times and delayed numerous times from being able to purchase and transfer firearms at various FFLs, including other delays of over 180 days, because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) including on 07/17/2019, 01/26/2023, and 3/8/2023, 4/5/2023, each time Delayed. This is not an all inclusive list but Exemplary of the situation CLARK faces in relation to burden on his right to keep and bear arms because of the operation of the NICS background check system and requirements in federal law to apply that actions to CLARK's attempts to purchase or transfer a firearm.

30. CLARK is frequently delayed or denied under the NICS system even though he has received multiple letters from the FBI reversing "Denied" determinations which specifically state that CLARK is eligible to purchase a firearm. One such letter

6

was dated August 29, 2016 from NICS Section, CJIS Division which contains in part :

"We have been able to determine you are eligible to possess or receive a firearm. The FBI Criminal Justice Information Services (CJIS) Division's NICS Section Firearm Appeal Certificate is enclosed." (underline in original)

And the Certificate referenced in that letter contained in part, "Mr. Clark is eligible to possess and receive a firearm" and "INITIATION DATE: February 8, 2016"

31. The FFLs at whose locations CLARK has been subjected to NICS background checks were open to the public at all times pertinent to the claims herein.

32. In January or February of 2023, CLARK sought to acquire a firearm (long gun - shotgun) for use of lawful self defense from an FFL but terminated that purchase attempt when informed that a deposit was required before the NICS check (as required by 18 U.S.C. §922(t)) would be performed and informed that if the FFL received a "Denied" acknowledgement response from NICS then CLARK would be required to pay a processing fee of $50.00.

33. CLARK would attempt to exercise CLARK's right to purchase lawful firearms more frequently but for the near certainty of that exercise being futile because of the enforcement of 18 U.S.C. §922(t)."

(ECF 1 at 12-17)

**ISSUES PRESENTED**

### I.    *FAILURE TO DRAW REASONABLE INFERENCE*

The panel properly noted that standing cannot rest on mere "speculation and conjecture". (Op. at 4) That is consistent with Supreme Court guidance but the inverse is also consistent with Supreme Court guidance. That being that unless a plaintiff's fear of prosecution is "imaginary or wholly speculative," allowing the claim is the appropriate decision.  See *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).  Recently, this court has said that "the court must accept the truth of all properly alleged facts and *draw all reasonable inferences in the plaintiff's favor*" (emphasis added) See *Brown v. City of Tulsa*, Appeal No. 23-5133(January 7, 2025). Mr. Clark set forth a lengthy trail of alleged facts about attempted purchases of firearms in his complaint (See Complaint references above). Those detailed allegations demonstrate there is a lengthy pattern of attempts by Mr. Clark to purchase firearms from FFLs and also a lengthy pattern of delays which stem from multiple enforcements of 18 U.S.C. 922(t) against Mr. Clark personally. Even though this pattern of facts evidences that Mr. Clark engaged in attempt after attempt to purchase firearms, the panel did not find those facts sufficient to draw the reasonable inference that  Mr. Clark "intends to engage in future purchases of handguns" and identifies a reason for not drawing that reasonable inference as being because Mr. Clark "offers no details" about these "future purchases" (See Op. at 6) but such details are unnecessary if the panel were to *draw all reasonable inferences* from the complaint.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the

Supreme Court explicitly stated that a claim *is plausible* "when the plaintiff *pleads factual content* that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* at 678 (emphasis added) .

Based on the detailed factual allegations of the complaint demonstrating a pattern of Mr. Clark engaging in many attempts to purchase firearms, it is nearly axiomatic that a reasonable inference to draw is that Mr. Clark's "intends to engage in future purchases" yet the panel did not make that reasonable inference. Instead, the panel asserted that "Mr. Clark presents nothing but "bare allegation[s]" to engage in conduct "at some unspecified time in the future." (Op. at 6) That description of "nothing but bare allegation[s]" cannot reasonably apply to the many detailed factual allegations in the complaint (see above) so the panel's use of "nothing but" must have been intended as being tightly cabined to "offers no details" about "future purchases" and not speaking to those *details* which show a lengthy pattern of purchase attempts by Mr. Clark. Mr. Clark need not offer both in order to reach above being "imaginary or wholly speculative". When *details* of a long pattern of purchase attempts are well pled, then *other details* about specific future purchase attempts are unnecessary if a reasonable inference is drawn as required under this court's precedent concerning review of motions to dismiss.

Of note, even after the dismissal by the district court on January 16, 2024, Mr. Clark did engage in such future attempt (future in relation to the date of dismissal) and was again delayed in making a purchase of a firearm. See motion to

amend the complaint filed January 24, 2024 :

> "Petitioner also intends to add factual allegations concerning an alleged violation of his fundamental right to keep and bear arms which occurred on *January 17, 2024* through causing time delay in his right to *purchase a firearm* for the purpose of self defense and other lawful purposes. These factual allegation were not known at the original filing of the Complaint." ECF 27 at 1 (emphasis added)

In addition, while impossible to be in the record at this point, after the briefing for this appeal was complete and before issuance of the panel decision on January 6, 2025, Mr. Clark attempted another purchase of a firearm from an FFL in the latter half of December (2024) just a few days before Christmas and, because of enforcement of 18 U.S.C. 922(t), was again delayed in being able to timely acquire a firearm.

## II.    *FAILURE TO RECOGNIZE CHILLING EFFECT AS A CONCRETE AND PARTICULARIZED ONGOING INJURY*

The failure to find standing conflicts with *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) in regard to establishing standing by the ongoing injury of a chilling effect on a fundamental right.

Apart from pleading his intent to make "future purchases" at *some* FFLs (Federal Firearm Licensees), Mr. Clark also provided *well pled facts* that he has been *chilled* from making attempts to purchase firearms at *some other* FFLs. See also paragraphs 32- 33 of the complaint (provided at page 7 above).

The panel opinion did not acknowledge this claim in the complaint that

> "CLARK has been chilled from attempting future purchases of firearms at _some_ FFLs who charge a fee for any NICS check that results in providing an acknowledgement of "Denied" to the FFL." (ECF 1 at 6) (emphasis added)

This claim to a chill on Mr. Clark's exercise of a fundamental constitutional right

at _some_ FFLs is a concrete and particularized _ongoing injury_ and substantiated by

_well pled factual allegations_ (ECF 1 at ¶¶ 32-33) and dismissal of that claim

conflicts with precedent.

### III.    IMPROPER ANALYSIS PRESUMPTION

The panel opinion asserted that:

> "Although he alleges that the FBI encouraged him to use the VAF system to eliminate future wrongful delays and denials, Mr. Clark fails to explain why he cannot take advantage of this system or why the system will not prevent future issues with background checks." (Op. at 6)

This statement improperly _presumes_ at least two things. Specifically,

one presumption, of lesser pertinence, it presumes that Mr. Clark alleged that

the "FBI encouraged". Mr. Clark did not allege that but even if he had,

encouraging Mr. Clark to associate himself with a list, the mere existence of

which he finds repulsive, would not meet with any success. That's one. And,

the other presumption, of greater import to a motion to dismiss analysis, this

11

statement *presumes finding of facts* such as that "this system" would provide
"advantage". A system that involves placement of a person onto a government list
cannot be presumed to be a "advantage" without also assessing or weighing the
disadvantages, thus the VAF issue is an improper issue to presume to be an
advantage on review of a motion to dismiss when facts about the VAF being
an advantage are not in the complaint and any presumed advantage might
require the person to waive a fundamental constitutional right such as the right of
freedom of association.  Though not in the complaint (just as an allegation of
the VAF being an advantage was not in the complaint), in his response to the
motion to dismiss, Mr. Clark did state that "[t]here are certainly valid reasons for
not voluntarily seeking to be placed onto a government list such as the VAF."
(ECF 13 at 15)  A reasonable inference from that statement is that there can be
disadvantages of "this system" of being placed on a government list. As example,
in a reply brief filed February 9, 2024, Mr. Clark set forth that:

> "Defendants did not refute that the VAF process is voluntary.
> Nor did Defendants dispute that if the VAF process were
> mandatory, that provision would be subject to First Amendment
> constitutional scrutiny for abridging the right of association."
> (ECF 32 at 3)

This raises a legitimate curiosity and comparator argument. What if the FBI had
developed a "government list" which exempted certain persons from being
arrested by any FBI agent, i.e., a list of those persons whom the agency has
deemed eligible to speak words which an FBI agent might otherwise have

discretion to arrest for speaking. And the FBI offered everyone an opportunity to be placed on that list by providing consent and a set of fingerprints. Would a federal judge find it to be an "advantage" to personally associate with that list? Or might it be a disadvantage to be associated with such a list because that list embodied something repugnant to principles the judge strongly believed in?

**CONCLUSION**

This court should grant a hearing and resolve the conflicts between this court's precedents and the dismissal order of the district court that was affirmed by the panel on January 6, 2025.

Petitioner will seek *pro bono* assistance for participation in the hearing.

Respectfully submitted,

Eric S. Clark ( pro se )
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**CERTIFICATE OF COMPLIANCE with required PRIVACY redactions.**

Appellant hereby certifies that:

All required privacy redactions have been made to the Appellant's motion.

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**CERTIFICATE OF COMPLIANCE**

**with Type-Volume Limit and with Typeface and Type Style Requirements**

1. This request for hearing complies with the type-volume limitation of
   Fed. R. App. P. 35(b)(2)(A) and 40(b)(1) because this request contains
   less than 3,900 words, specifically **3,356 words**

2. This request complies with the typeface requirements of
   Fed. R. App. P. 32(a)(5) and the type style requirements of
   Fed. R. App. P. 32(a)(6) because this motion has been prepared
   in a proportionally spaced typeface using Microsoft Office
   Word 2007 (12.0.6787.5000)  SP3 MSO (12.0.6607.1000) in
   14 point Times New Roman.

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

14

## CERTIFICATE OF SERVICE

Appellant hereby certifies that service was made by mailing

true and correct copies of the foregoing

PETITION FOR HEARING BY PANEL AND  HEARING EN BANC


by deposit in the United States Mail, Postage prepaid,

on January 13, 2024 addressed to:


Christopher Allman
500 State Ave., Suite 360
Kansas City, KS 66101

and

Brian E. Vanorsby
1200 Epic Center
301 N. Main
Wichita, Kansas 67202


**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

Appellate Case: 24-3088    Document: 28-1    Date Filed: 01/06/2025    Page: 1

FILED
United States Court of Appeals
Tenth Circuit

**January 6, 2025**

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

ERIC S. CLARK,

      Plaintiff - Appellant,

v.

MERRICK GARLAND, United States
Attorney General, in both his official and
individual capacities; (FNU) (LNU),
unknown Government Agent #1, in
individual capacity; (FNU) (LNU),
Unknown Government Agent #2, in
individual capacity; (FNU) (LNU),
Unknown Government Agent #3, in
individual capacity; (FNU) (LNU),
Unknown Government Agent #4, in
individual capacity; (FNU) (LNU),
Unknown Government Agent #5, in
individual capacity; (FNU) (LNU),
Unknown Government Agent #6, in
individual capacity,

      Defendants - Appellees.

No. 24-3088
(D.C. No. 2:23-CV-02170-JAR-RES)
(D. Kan.)

## ORDER AND JUDGMENT[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HARTZ**, **BALDOCK**, and **MORITZ**, Circuit Judges.[**]

Pro se Plaintiff Eric S. Clark sued Attorney General Merrick Garland and six unknown government agents, alleging that 18 U.S.C. § 922 (and particularly §§ 922(g)(3), (k), and (t)) violate the Second Amendment facially and as applied to him. He sought damages, a declaratory judgment, and injunctive relief. The United States District Court for the District of Kansas dismissed the action for lack of subject-matter jurisdiction because Mr. Clark failed to show he had standing to pursue his requested relief. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Mr. Clark is a convicted felon whose rights were restored in 2013. *See Clark v. Garland*, Case No. 23-2170-JAR-RES, 2024 WL 167357, at *2 (D. Kan. Jan. 16, 2024). He has tried to purchase firearms from various federal firearms licensees but his background checks were often denied or delayed. *See id.* In 2021 the Federal Bureau of Investigation (FBI) informed him that he could apply to the Voluntary Appeal File (VAF)—"a separate procedure" designed to "prevent future extended delays or erroneous denials during the background check process." *Id.*

Mr. Clark's complaint alleged that (1) because of injuries from an accident, he

---

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

"intends to use marijuana for potential pain relief in the future," in violation of 18 U.S.C.

§ 922(g)(3), Aplt. App. at 18; (2) that he "has intent to engage in conduct of restoring a

rusty firearm . . . that will require [him] to remove or alter or obliterate" the firearm's

serial number, in violation of 18 U.S.C. § 922(k), Aplt. App. at 25; and (3) that he would

"attempt to exercise [his] right to purchase lawful firearms more frequently but for the

near certainty of that exercise being futile because of the enforcement of 18 U.S.C.

§ 922(t)," Aplt. App. at 24. As relief, Mr. Clark sought nominal and compensatory

damages; a declaration stating that the challenged statutes violate the Second

Amendment; and injunctive and "further equitable relief the court deems appropriate."

Aplt. App. at 12. The district court held that sovereign immunity barred Mr. Clark's

requests for damages and retrospective declaratory and injunctive relief, *see Clark*, 2024

WL 167357 at *4, and that Mr. Clark failed to show standing to seek prospective

injunctive and declaratory relief, *see id.* at *7. On appeal, Mr. Clark challenges only the

latter ruling.

## II.    DISCUSSION

We review de novo a dismissal for lack of Article III standing. *See Young v. Colo.

Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024). "[S]tanding generally has three

requirements: (1) an injury in fact; (2) causation; and (3) redressability." *Colo. Outfitters

Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016). The plaintiff bears the burden

to prove "standing to seek each form of relief in each claim." *Rocky Mountain Gun

Owners v. Polis*, 121 F.4th 96, 108 (10th Cir. 2024) (internal quotation marks omitted).

Mr. Clark argues he has standing to pursue prospective equitable relief against the

challenged statutes. We disagree. When a plaintiff asserts a pre-enforcement challenge against "an existing law where the plaintiff has yet to be prosecuted," he "must present concrete plans to engage in conduct that has the potential to violate the challenged statute . . . ." *Id.* at 110 (brackets and internal quotation marks omitted). "Speculative plans or vague intentions to *potentially* violate the challenged statute are insufficient." *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (holding affidavits expressing intent to return to Egypt and Sri Lanka at unspecified times in the future to observe threatened species were "simply not enough" to confer standing to seek injunctive relief because "such some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that our cases require" (internal quotation marks omitted)); *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) ("[A] court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." (brackets and internal quotation marks omitted)).

We begin with § 922(g)(3), which prohibits, among other things, possession of a firearm by a person "who is an unlawful user of . . . any controlled substance." Marijuana is a controlled substance. *See* 21 U.S.C. § 812, sched. I(c)(10). We have held that a person violates § 922(g)(3) only when his use of a controlled substance is "regular and ongoing at the time he possessed the . . . firearm." *United States v. Morales-Lopez*, 92 F.4th 936, 945 (10th Cir. 2024) (internal quotation marks omitted). Here, Mr. Clark alleges that he "intends to become a user of marijuana for potential pain relief in the near future including use of the substance in a State where such use is lawful but that use is

Page 4

Appellate Case: 24-3088  Document: 28-1  Date Filed: 01/06/2025  Page: 5

unlawful under Federal law." Aplt. App. at 24. This allegation falls short in several respects. He does not say how soon the "near future" will come or what State he will visit to purchase marijuana. He does not say whether he will use marijuana in that State long enough to become a "regular and ongoing" user of the substance. *Morales-Lopez*, 92 F.4th at 945 (internal quotation marks omitted). And he does not state whether he will take a firearm with him. In short, Mr. Clark shares no "concrete plans" to violate the law. *Rocky Mountain Gun Owners*, 121 F.4th at 110.

We consider next § 922(k), which prohibits, among other things, possession of "any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." Mr. Clark alleges that he "has intent to engage in conduct of restoring a rusty firearm" at some point "that will require [him] to remove or alter or obliterate the rusty firearm's manufacturer's serial number." Aplt. App. at 25. Again, Mr. Clark offers nothing but "vague intentions" to violate the statute. *Rocky Mountain Gun Owners*, 121 F.4th at 110. He does not allege whether he has already purchased a rusty firearm or whether he plans to purchase one at some point in the future. He does not allege he has even *identified* a supposed rusty firearm, assessed its condition, and determined that its *actual* physical condition requires the alteration or obliteration of its serial number.

Finally, we address § 922(t), which requires licensed importers, manufacturers, and dealers to "contact[] the national instant criminal background check system" before transferring "a firearm to any other person who is not licensed" under the statute. Mr. Clark alleges that he "intends to engage in future purchases of handguns

and appropriate associated ammunition from out of state private parties . . . after the date of the filing of [his] complaint and beyond the final disposition of this case." Aplt. App. at 18. Yet Mr. Clark offers no details about these "future purchases" other than that he wants to purchase firearms in the future. *Id.* Moreover, even if Mr. Clark had standing, his claim for injunctive relief would fail on equitable grounds. Although he alleges that the FBI encouraged him to use the VAF system to eliminate future wrongful delays and denials, Mr. Clark fails to explain why he cannot take advantage of this system or why the system will not prevent future issues with background checks. His "continued susceptibility to injury" from § 922(t) is therefore far from "reasonably certain." *Jordan*, 654 F.3d at 1024.

To be sure, "granular specificity is unnecessary" to establish standing in a pre-enforcement challenge. *Rocky Mountain Gun Owners*, 121 F.4th at 110. But Mr. Clark presents nothing but "bare allegation[s]" to engage in conduct "at some unspecified time in the future." *Id.* Such allegations do not suffice. *See Colo. Outfitters Ass'n*, 823 F.3d at 551 (plaintiff did not have standing to challenge statute outlawing possession of *new* large-capacity magazines (LCMs) simply "because *eventually,* her LCMs w[ould] wear out and because it would be *possible* to lose her LCMs (or lose continuous possession of them) in the meantime" (brackets and internal quotation marks omitted)); *DeWilde v. Att'y Gen. of U.S.*, 2024 WL 1550708, at *3 (10th Cir. Apr. 10, 2024) (plaintiff did not have standing to challenge statute prohibiting the possession or transfer of machineguns because he alleged only a vague desire to possess a machinegun, "untethered" from "concrete plan[s] to possess or transfer a machinegun").

Appellate Case: 24-3088    Document: 28-1    Date Filed: 01/06/2025    Page: 7

## III.    CONCLUSION

We **AFFIRM** the district court's dismissal.

Entered for the Court

Harris L Hartz
Circuit Judge

PRESS FIRMLY TO SEAL

PRESS FIRML


FSC
MIX
FSC C116166


PAPER
POUCH

PRIORITY MAIL
FLAT RATE
ENVELOPE




US POSTAGE AND PITNEY BOWES

ZIP 66095
02 7M
0001324287

$ 010.45°
JAN 13 2025



# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY®
## MAIL

**FROM:**

Eric S. Clark
1430 Dane Ave
Williamsburg, KS 66095

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**TO:**

# FLAT RATE ENVELOPE
## ONE RATE ■ ANY WEIGHT

**Office of the Clerk,**
United States Circuit Court for the Tenth District
Byron White Court House
**1823 Stout Street**
**Denver, CO 80257**

## TRACKED • INSURED


UNITED STATES
POSTAL SERVICE ®

**USPS TRACKING #**

14F May 2020
12 1/2 x 9 1/2


USPS.COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.



# UNITED STATES POSTAL SERVICE ® | PRIORITY® MAIL

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

## TRACKED ■ INSURED



PS00001000014        EP14F May 2020

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE