No. 24-3088

---

**United States Court of Appeals
for the Tenth Circuit**

---

**Eric S. Clark**
Plaintiff-Appellant
**v.**
**Attorney General of the United States of America
Merrick Garland, et al.**
Defendants-Appellees

---

Appeal from the U.S. District Court
for the District of Kansas
The Honorable Julie A. Robinson, United States District Judge
( 23-cv-02170-JAR-RES )

---

**BRIEF OF APPELLANT**

---

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

ORAL ARGUMENT

Appellant intends to retain pro bono
counsel and seek permission for counsel
to appear by video link

*i*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES  ............................................. iv

PRIOR OR RELATED APPEALS ………………………….. ix

JURISDICTIONAL STATEMENT  .............................................  1

STATEMENT OF THE ISSUES  ...............................................  1

STATEMENT OF THE CASE .........................................................  2

SUMMARY OF ARGUMENT  ......................................................  3

ARGUMENT  …………………………………………………  3

**ISSUE 1**  …………………………………………………  3

The district court erred by dismissing CLARK's original complaint for lack of jurisdiction, i.e., erred concerning sovereign immunity and standing.

### Sovereign immunity:

The district court erred by failing to address an equitable claim to prospective relief  for unconstitutional conditions and/or third party coercion circumstances that fall within the *Ex Parte Young* exception to sovereign immunity.

### Standing:

The district court erred by limiting review of claims to relief *exclusively* to § 1983, *Bivens*, and the Declaratory Judgment Act; thus, failing to properly address equity as an available avenue for relief.

**ISSUE 2** ……………………………………………………. 23

The district court erred in an alternative ruling that there was failure to state a claim.

**ISSUE 3** ……………………………………………………. 24

 The district court erred by misapprehending the basis of a claim to a Second Amendment violation.

**ISSUE 4** ……………………………………………………. 28

The district court erred by concluding there was not a credible threat of enforcement of § 922(g)(3) and § 922 (k) provisions against CLARK.

CONCLUSION ………………………………………………..... 37

REQUEST FOR ORAL ARGUMENT ………………………..... 38

CERTIFICATE OF COMPLIANCE WITH PRIVACY ………..... 39

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ………..... 40

CERTIFICATE OF SERVICE ……………………………..… 41

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

Article III, Section 2 ……………………………….. 11

Amendment II ……………………………….. 8

Amendment V ……………………………….. 8

Amendment XIV ……………………………….. 8

## FEDERAL SUPREME COURT CASES

*303 Creative LLC v. Elenis,*
        143 S. Ct. 2298 (2023) ……………………………….. 31

*Abbott Laboratories v. Gardner,*
        387 U.S. 136 (1967) ……………………………….. 36

*Ashcroft v. Iqbal,*
        556 U.S. 662 (2009) ……………………………….. 12, 14

*Babbitt v. United Farm Workers National Union,*
        442 U.S. 289 (1979) ……………………………… 32, 34, 36

*Bantam Books, Inc.* v. *Sullivan,*
        372 U. S. 58 (1963) ……………………………….. 17

*Belknap v. Schild,*
        161 U. S. 10 (1896) ……………………………….. 20

*Bell v. Hood,*
        327 U.S. 678 (1946) ……………………………….. 17

*iv*

*Bell Atl. Corp. v. Twombly,*
     550 U.S. 544 (2007)     …………………………..   14

*Bemis Bros. Bag Co. v. United States,*
     289 U.S. 28 (1933)     …………………………..   13

*Boyd v. United States,*
     116 U.S. 616 (1886)     …………………………..   6

*Byars v. United States,*
     273 U.S. 28 (1927)     …………………………..   6

*Clapper* v. *Amnesty Int'l USA,*
     568 U. S. 398 (2013)     ………………………..   35

*Conley v.Gibson,*
     355 U.S. 41 (1957)     …………………………..   14

*Davis v. Gray,*
     83 U.S. (16 Wall) 203 (1872)   …………………..   20

*Elrod v. Burns,*
     427 U.S. 347 (1976)     …………………………..   27

*Ex parte Young,*
     209 U.S. 123 (1908)     …………………………..   1, 20, 24

*Gouled v. United States,*
     255 U.S. 298 (1921)     …………………………..   6

*Herndon v. C., R.I. & P. Ry. Co.,*
     218 U. S. 135 (1910)     …………………………..   20

*Hickman v. Taylor,*
     329 U.S. 495 (1947)     …………………………..   13

*Holder v. Humanitarian Law Project,*
     561 U.S. 1 (2010)     …………………………..   34

*v*

*Hopkins v. Clemson College,*
   221 U. S. 636 (1911) ………………………….. 20

*Johnson v. City of Shelby,*
   574 U.S. 10 (2014) ………………………….. 12, 15

*Leatherman v. Tarrant Cty.*
   *Narcotics Intelligence & Coordination Unit,*
   507 U.S. 163 (1993) ………………………….. 14

*Little v. Barreme,*
   6 U.S. (2 Cranch) 170 (1804) ………………………….. 20

*Ludwig v. Western Union Telegraph Co.,*
   216 U. S. 146 (1910) ………………………….. 20

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ………………………….. 27

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ………………………….. 35

*Mumm v. Jacob E. Decker & Sons,*
   301 U.S. 168 (1937) ………………………….. 13

*National Rifle Association of America v. Vullo,*
   Docket No. 22–842, Slip Op.(May 30, 2024) ………….. 10

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
   597 U.S. 1 (2022) ………………………….. 9

*Noble v. Union River Logging R. Co.,*
   147 U. S. 165 (1893) ………………………….. 20

*Osborn v. Bank of United States,*
   22 U.S. (9 Wheat.) 738 (1824) ………………………….. 20

*Pennoyer v. McConnaughy,*
    140 U. S. 1 (1891) ………………………………….. 20

*Philadelphia Co. v. Stimson,*
    223 U.S. 605 (1912) …………………………………. 17, 19

*Reg'l Rail Reorganization Act Cases,*
    419 U.S. 102 (1974) ………………………………….. 36

*School of Magnetic Healing v. McAnnulty,*
    187 U. S. 94(1902) ………………………………….. 20

*Scott v. Donald,*
    165 U. S. 107 (1897) ………………………………….. 20

*Scranton v. Wheeler,*
    179 U. S. 141 (1900) ………………………………….. 20

*Skinner v. Switzer,*
    562 U.S. 521 (2011) ………………………………….. 12

*S. Pac. R.R. Co. v. United States,*
    168 U.S. 1 (1897) ………………………………….. 13

*Smyth v. Ames,*
    169 U. S. 466 (1898) ………………………………….. 20

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ………………………………….. 29, 35, 36

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ………………………………….. 32, 36

*Swierkiewicz v. Sorema,*
    534 U.S. 506 (2002) ………………………………….. 13

*vii*

*Tindal v. Wesley,*
     167 U. S. 204 (1897)    …………………………..  20

*United States v. Lee,*
     106 U. S. 196 (1882)    ………………………...  20

**FEDERAL TENTH CIRCUIT**

*Cressman v. Thompson,*
     719 F.3d 1139 (10th Cir. 2013)   ………………………..  34

*Initiative & Referendum Inst. v. Walker*,
     450 F.3d 1082 (10th Cir. 2006)   ………………………..  35

*United States v. Sup. Ct. of New Mexico,*
     839 F.3d 888 (10th Cir. 2016)   ………………………..  34

*Winsness v. Yocom,*
     433 F.3d 727 (10th Cir. 2006)   ………………………..  24, 28

*Wyoming ex rel. Crank v. United States*,
     539 F.3d 1236 (10th Cir. 2008) ………………………..  28

**OTHER FEDERAL CIRCUITS**

*New Hampshire Right to Life Political Action Comm. v. Gardner*,
     99 F.3d 8 (1st Cir. 1996)   ………………………..  28

*Cayuga Nation v. Tanner,*
     824 F.3d 321 (2d Cir. 2016)   …………………………..  34

*Tweed-New Haven Airport Auth. v. Tong,*
     930 F.3d 65 (2d Cir. 2019)   …………………………..  34

*Maryland Shall Issue, Inc. v. Wes Moore*,
     No. 21-2017 (4th Cir., Nov. 21 2023)   ………………...  9, 25

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure, Rule 8    ………………...    3,12,13

Fed. R. Civ. P. 84 (1940)    ………………………………...    14

Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* § 1201 (4th ed. 2022) ....    14

Charles E. Clark,
   *The Complaint in Code Pleading*,
   35 Yale L.J. 259, 274 (1926)    …………………………...    13

Charles E. Clark,
   *Code Pleading* §§ 19, 70 (1939) …………..…………...    13

Fordham Law Review,
   Volume 10 Issue 2 Article 6, 1941, *The Complaint Under
   the Federal Rules of Civil Procedure.*    …………………    14

James W. Moore,
   *Federal Practice 3*, 145–50 (1938) ……………………...    13

**PRIOR OR RELATED APPEALS**

There are no prior or related appeals concerning this case.

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of dismissal of a lawsuit seeking, in part, equitable relief of an injunction and challenging the constitutionality of 18 U.S.C. § 922 in its entirety, 18 U.S.C. § 922(g)(3), 18 U.S.C. § 922(k) and use of incriminating questions on Form 4473.

This Court of Appeals for the Tenth circuit has jurisdiction over this case pursuant to 28 U.S.C. § 1291. The district court had jurisdiction pursuant to 28 U.S.C. § 1331(federal question).

This appeal arises from a final decision of the district court. See Order [ECF 22] and Entry of Judgment [ECF 23] each dated May 30, 2024. Plaintiff-Appellant timely appealed on June 27, 2024 [ECF xx].

## STATEMENT OF THE ISSUES

**ISSUE 1:**

The district court erred by dismissing CLARK's original complaint for lack of jurisdiction, i.e., erred concerning **sovereign immunity** and **standing**.

**Sovereign immunity:**

The district court erred by failing to address an equitable claim to prospective relief for unconstitutional conditions and/or third party coercion circumstances that fall within the *Ex Parte Young* [1] exception to sovereign immunity.

[1] 209 U.S. 123 (1908)

1

**Standing:**

The district court erred by limiting review of claims to relief *exclusively* to § 1983, *Bivens*, and the Declaratory Judgment Act; thus, failing to properly address equity as an available avenue for relief.

**ISSUE 2:**

The district court erred in an alternative ruling that there was failure to state a claim.

**ISSUE 3:**

 The district court erred by misapprehending the basis of a claim to a Second Amendment violation.

**ISSUE 4:**

The district court erred by concluding there was not a credible threat of enforcement of  § 922(g)(3) and § 922 (k) provisions against CLARK.

## STATEMENT OF THE CASE

On January 16, 2024, the district court granted the Defendants' motion to dismiss [ECF 12] and ordered the case dismissed in its entirety without prejudice for lack of subject matter jurisdiction. See order ECF 22 at 18 and judgment ECF 23 at 1.

## SUMMARY OF ARGUMENT

Dismissal of the case was in error, subject matter jurisdiction exists in that there is no failure to state a claim and CLARK has standing including to challenge provisions for which there is a credible threat to CLARK's exercise of liberty.

## ARGUMENT

**ISSUE 1:**

**The district court erred by dismissing CLARK's original complaint for lack of jurisdiction, i.e., erred concerning sovereign immunity and standing.**

> "The Court addresses the following grounds for dismissal under Rule 12(b)(1) in turn: (1) sovereign immunity, and (2) standing. Because the Court finds it **lacks jurisdiction** on these grounds, it need not consider Defendants' additional argument that certain claims under § 922(t) are moot." (ECF 22 at 6) (emphasis added)

The two grounds identified are related in a domino fashion making them closely intertwined but both grounds are faulty for the same underlying reason – failure to address a claim for which sovereign immunity does not apply and for which standing exists based on the plausibility of alleged facts.

To begin, the district court was correct that "[t]he party seeking to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is proper" (ECF 22 at 6) but, as a matter of law, the way that is accomplished is by complying with Rule 8 of the Federal Rules of Civil Procedure by **(1)** a short and

plain statement of the grounds for the court's jurisdiction, such as: "equitable relief

for unconstitutional conduct committed by unknown government agents" (ECF 1

at 1) seeking "an injunction against the deprivation of his rights protected under the

Second Amendment to the federal Constitution"(ECF 1 at 5); and **(2)** a short and

plain statement of the claim showing that the pleader is entitled to relief,

such as:

> "CLARK was prevented from making those purchases in a timely
> manner solely because of Defendants' enforcement of the statutes
> found at 18 U.S.C. §922(t) which is an infringement on CLARK's
> fundamental right to keep and bears arms which is protected by the
> Second and Fourteenth Amendments of the Federal Constitution"
> (ECF 1 at 2);

and **(3)** a demand for the relief sought, such as:

> "seeks permanent injunctive relief, i.e., the enjoining of all agents and
> officials of the federal government from taking any future actions to
> enforce18 U.S.C. §922(t) against anyone including CLARK because it
> is imminent that CLARK's right as protected by the Second
> Amendment will be infringed in the future (prospective harm) by
> enforcement actions performed by defendants or others authorized to
> enforce 18 U.S.C. §922 (t) directly or indirectly." (ECF 1 at 7)

**Sovereign immunity:**

**The district court erred by failing to address an equitable claim to prospective
relief for unconstitutional conditions and/or third party coercion
circumstances that fall within the *Ex Parte Young* exception to sovereign
immunity.**

Equity is not a creature of statute (although, over time, there were federal statutes

that authorized plaintiffs to obtain various kinds of equitable relief, especially

4

injunctions, in certain circumstances) and the different kinds of claims heard were not sharply distinguished from each other (as the forms of action were) and equity claims are usually not traceable to other authority. Although equity lacked a "cause of action", courts still had reasons to act. It is only in a loose, non-technical sense that one could speak of a court having a cause of action in equity — something more like "a cause for acting."

The complaint sought "equitable relief for unconstitutional conduct committed by unknown government agents" (ECF 1 at 1) including a prospective injunction of the ongoing conduct of government agents. (See ECF 1 at 6, "The facts alleged demonstrate a likelihood of future enforcement that will violate CLARK's constitutionally protected right.") Such injunction fits within the *Ex Parte Young* exception, i.e., "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (ECF 22 at 7) and; that is regardless of whether the ongoing violation is unconstitutional *directly* or whether the ongoing violation is unconstitutional *indirectly* through causing unconstitutional conditions even if through third party coercion. These types of indirect violations is embodied in the constitutional maxim that the government cannot do indirectly what it is not permitted to do directly

 ("*Quando aliquid prohibetur ex directo, prohibetur et per obliquum*").
The Supreme Court has long followed this axiomatic principle that stems from the constitution by cautioning that "it is the duty of courts to be watchful for the

5

constitutional rights of the citizen, and against any stealthy encroachments thereon." *Boyd v. United States*, 116 U.S. 616, 635, 6 S.C.t. 524, 535 (29 L. Ed. 746); *Gouled v. United States*, 255 U.S. page 304, 41 S.C.t. 261, supra." *Byars v. United States*, 273 U.S. 28,32 (1927). CLARK asserts that coercion of third parties either by operation of force of federal law, or by federal government officials, falls distinctly into an area of potential encroachment upon individual fundamental federal rights that make it especially important for courts to pay special notice and careful attention.

The district court correctly noted that 28 U.S.C. § 1331 "does not waive the United States' sovereign immunity" (ECF 22 at 8) but the original public meaning of the constitution did not provide sovereign immunity for acts of the United States which accomplish indirectly what the United States is prohibited from doing directly. The specific term of "sovereign immunity" is not even mentioned in the governing document that holds ultimate supremacy and that constitution created a federal government of limited powers. Sovereign immunity was derived from British common law doctrine based on the idea that the King could do no wrong, but the crafting of the federal constitution set the idea of Kings on the chopping block and certain protections for the King were laid waste . . . including immunity from injunctive relief when the newly minted limited sovereign (United States) operates in contravention of that constitution. As a result, there are instances of official-capacity claims when sovereign immunity is not available for defending

6

claims against the United States because of being a *limited* sovereign. Not opining

on the wisdom of doing so, but the States could abolish the present federal

sovereign by constitutional amendment which is sound evidence that the federal

sovereign is of a limited nature. As such, federal sovereign immunity is also

evidenced to be of a limited nature, unlike sovereign immunity of the States.

Determination of the existence, or non-existence, of federal sovereign

immunity is a matter of law such that the court are not bound by the arguments of

the parties to make that determination; thus, the comment by the district court that

"Plaintiff wholly fails to address sovereign immunity in his response to the motion

to dismiss." has no legal bearing on this appeal. The district court acknowledged

> "Plaintiff's claims for prospective injunctive and declaratory relief
> against the federal officials named as Defendants in this case are
> covered by the *Ex Parte Young* exception to sovereign immunity."
> ECF 22 at 8.

The challenge to 18 U.S.C. §922(t) is not the usual mould of "pre-enforcement"

challenges, in that the requirements which effect a restriction of an individual

fundament right is *not directly enforced* against those desiring to engage in

exercise of the right (e.g., purchase a firearm from a Federal Firearms Licensee

("FFL"), but is nonetheless a pre-enforcement challenge but could be more

accurately and pertinently described as challenging an "unconstitutional condition"

or described as a "third party coercion" type of challenge which, while not

7

anchored to any single clause of the Constitution, are plainly challenges

rooted in substantive due process considerations. See ECF 1 at 2:

> "CLARK was prevented from making those purchases in a timely
> manner solely because of Defendants' enforcement of the statutes
> found at 18 U.S.C. §922(t) which is an infringement on CLARK's
> fundamental right to keep and bears arms which is protected by the
> Second and Fourteenth Amendments of the Federal Constitution and;
> is a violation of CLARK's right to Due Process which is protected by
> the Fifth and the Fourteenth Amendments of the Federal
> Constitution."

For the district court to say that "Plaintiff could not be prosecuted under §

922(t), since that statute imposes obligations on the Federal Firearms Licensees

("FFLs")." (ECF 38 at 9) misses the mark because the government cannot do

indirectly what it is prohibited from doing directly. A prosecution of CLARK by

the government in particular is not a requirement for there to be a credible threat of

adverse action against CLARK, namely, an act that infringes on his right to keep

and bear arms. Coercion of a third party (i.e., an indirect act of government) can

constitute a credible threat. A coercive statute that applies only to Federal Firearms

Licensees ("FFLs") which must be followed by FFLs under threat of a $5,000.00

fine still acts (albeit indirectly) against individuals. In short, 18 U.S.C. § 922(t)

operates as the *functional equivalent* of STATE ACTION of government

(albeit operating indirectly through coercion of a third party, i.e., FFLs).

Specifically, in the case of § 922(t), the coercion by the government of third party actions (e.g., requiring a NICS background check be performed and requiring that a firearm not be sold if the NICS background check produces a response other than proceed") is the *indirect cause of "time delay"* when CLARK attempts to exercise his fundamental right to keep and bear arms in the form of purchasing a firearm from an FFL and it is the "time delay" which constitutes a Second Amendment violation of CLARK's right. See, e.g., *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) at footnote 9, "we do not rule out constitutional challenges to shall-issue regimes where, **for example, lengthy wait times** in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." (emphasis added)

The unconstitutional condition ("time delay") in purchasing firearms has caused injury-in-fact to CLARK numerous times and is quite certain to continue into the foreseeable future. Rhetorically, as to length of time delay when infringing on the right to self defense, how long is too long? See ECF 1 at 81-84 under a section titled, "*DE MINIMUS VIOLATION OF A FUNDAMENTAL RIGHT*".) A time delay at any time "could well be the critical time in which the applicant expects to face danger." *Maryland Shall Issue, Inc. v. Wes Moore*, No. 21-2017 (4th Cir., Nov. 21 2023) Regardless of the length of time delay caused by the requirements of 18 U.S.C. §922(t), those obligations placed on a third party is

9

THE CAUSE (though indirectly) of the unconstitutional condition on CLARK.

Just as the Supreme Court's "decision in *Bantam Books* provides an example of

how government coercion of a third party can indirectly bring about a First

Amendment violation (See also *National Rifle Association of America v. Vullo*,

Docket No. 22–842, Slip Op.  May 30, 2024 (JACKSON, J., concurring) ("NRA"),

this present case on appeal provides another example, albeit regarding of the

Second Amendment rather than the First Amendment (although any *requirement*

for CLARK to interact with the Voluntary Appeal File ("VAF") procedure offered

by the Federal Bureau of Investigation ("FBI") would provide yet another example

concerning the First Amendment).

    In the present case, FFLs are the third party being coerced by threat of

penalties in law that constitute the government indirectly acting to bring about

violations of an enumerated fundament constitutional right of CLARK.

While this claim to an unconstitutional condition or third party coercion has been

a retrospective cause of multiple instances of injury-in-fact, the same condition

act prospectively and will continue to do so until the condition is remediated  (i.e.,

until the force of law upon FFLs to follow requirements of 18 U.S.C. §922(t) is

removed). Because of that it is a prospective cause for relief from

imminently impending injury.

Justice Jackson noted in her *NRA* concurrence that "[w]hether and how government coercion of a third party might violate another party's First Amendment rights will depend on the facts of the case." The same is true for the Second Amendment, thus, absence of certain facts *at the pleading stage* are insufficient to rule out a violation as pleadings must only allege enough facts to show plausibility, not the full panorama of facts that will be brought forward by the parties. The alleged facts of the complaint were sufficient to show plausibility of a grievance (equitable claim of unconstitutional conditions) based on third party coercion for which the district court had jurisdiction and; failure of the district court to address that claim is reversible error, i.e., an error of law.

**Standing:**

**The district court erred by limiting review of claims to relief *exclusively* to § 1983, *Bivens*, and the Declaratory Judgment Act; thus, failing to properly address equity as an available avenue for relief.**

> "Plaintiff alleges claims under § 1983, *Bivens*, and the Declaratory Judgment Act. As described below, even if Plaintiff has standing, this case must be dismissed because he fails to allege facts that would support plausible claims under any of these avenues for relief."
> (ECF 22 at 14)

A *Bivens* action is not an exclusive form for a claim to equity. The Constitution of the United States, Article III, Section 2 provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their

11

Authority;" and; Amendment XI curtails that for cases "prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State" but does not curtail that concerning cases prosecuted against the United States.

There never was such a thing as an equitable cause of action. There were no forms of action in equity. Equity has a different structure, one that emphasizes grievances. Whether law or equity, the Federal Rules of Civil Procedure, Rule 8(a), indicates that a complaint must contain "a short and plain statement of the claim." The Supreme Court of the United States has read Rule 8 to require that factual allegations meet a threshold "plausibility standard." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) but has also consistently read the rule to eschew any requirement that complaints link those allegations "to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). In *Johnson v. City of Shelby*, it was confirmed that when plaintiffs provide a sufficient "factual basis for their complaint," they are "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." 574 U.S. 10, 12 (2014) (per curiam). Thus, even if CLARK did not offer a precise legal theory of "unconstitutional conditions" (or failed to use those magic words to label a "cause of action" for a claim to equity) in order to link his claims to the alleged facts, dismissal of the complaint was in error.

12

As more background, before Rule 8's adoption in 1937, courts of law required complaints to plead a "cause of action," or legal theory. Charles E. Clark, *The Complaint in Code Pleading*, 35 Yale L.J. 259, 274 (1926). And subsequently, Rule 8 did away with this requirement, replacing it with the requirement that a plaintiff plead a "claim," understood at the time to "denote the aggregate of operative facts which give rise to a right enforceable in the courts." James W. Moore, *Federal Practice 3*, 145–50 (1938); Charles E. Clark, *Code Pleading* §§ 19, 70 (1939). In doing so, Rule 8 "restrict[ed] the pleadings to the task of general notice-giving." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Rule 8's rejection of a "cause of action" pleading requirement drew from existing federal equity practice. *See* Fed. R. Civ. P. 8(a) advisory committee's note to 1937 adoption. Equity Rule 25 required only "that the plaintiff … concisely set forth the ultimate facts" "upon which the plaintiff asks relief." *Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 170–71 (1937). Then, "at a trial upon the merits," the plaintiff would "have the relief appropriate to the facts … pleaded, whether he ha[d] prayed for it or not." *Bemis Bros. Bag Co. v. United States*, 289 U.S. 28, 33–34 (1933); see also *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 57 (1897). Sample complaints issued with the original rules in 1938 and designed to be sufficient under Rule 8 "indicate … the simplicity and brevity … which the rules contemplate." Fed. R. Civ. P. 84 (1940); *Swierkiewicz v. Sorema*, 534 U.S. 506,

13

513 n.4 (2002)(noting that the sample complaints were "sufficient under the rules"). A complaint for negligence under the Federal Employers' Liability Act, for example, included only a description of the accident and harms to the plaintiff, omitting any mention of the statute. Fed. R. Civ. P. 84, Form 13 (1940). See also Fordham Law Review, Volume 10 Issue 2 Article 6, 1941, *The Complaint Under the Federal Rules of Civil Procedure*. The adoption of Rule 8 prompted efforts to require plaintiffs to also plead a "cause of action." But "none of those proposals bore fruit." Charles Alan Wright &Arthur R. Miller, *Federal Practice and Procedure* § 1201(4th ed. 2022).

Then *Conley v.Gibson* recognized that "simplified 'notice pleading'" requires "fair notice of what the plaintiff's claim is and the grounds upon which it rests." 355 U.S. 41, 47 (1957). Over the ensuing decades, the Supreme Court repeatedly struck down "heightened pleading standard[s]" as "impossible to square" with "the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also, e.g., Swierkiewicz*, 534 U.S. at 515. The Supreme Court has since clarified that a complaint must contain "enough *facts* to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *see also Iqbal*, 556 U.S. at 678. But it has left intact Rule 8's

14

rejection of any requirement to plead "the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11.

The alleged facts of CLARK's complaint are sufficient to show plausibility of an equitable claim for which the district court had jurisdiction and; failure of the district court to address that claim is reversible error, i.e., an error of law.

To expound more on this topic, the Supreme Court has never held that failure to plead a "cause of action" for an equitable claim for injunctive relief from unconstitutional conditions (whether a direct violation of a constitutionally protected right - whether such right is enumerated or unenumerated) or relief from third party coercion which indirectly infringes on such a private right. Private right of action to equitable relief was explicitly pled in the complaint in this case. See ECF 1 at 4-5:

> "Under private right of action, *for compensatory damages, injunctive relief and equitable relief,* CLARK seeks compensatory damages, an injunction against the deprivation of his rights protected under the Second Amendment to the federal Constitution and seeks such further equitable relief the court deems appropriate."

The district court only addressed the private right as a "*Bivens* claim" which was an understandable *mis-statement* of what CLARK actually sought.

> "Plaintiff seeks the following relief: (1) a declaration that the provisions at issue violate the Second Amendment under the Declaratory Judgment Act; (2) nominal damages, injunctive, and equitable relief under 42 U.S.C. § 1983; and (3) compensatory,

15

> injunctive, and equitable damages as a "private right of action for
> injunctive relief and equitable relief" **under *Bivens*.**"
> (ECF 22 at 5-6)(emphasis added)

See also ECF 38 at 2 :

> "Plaintiff prayed for the following relief: (1) a declaration that the
> provisions at issue violate the Second Amendment under the
> Declaratory Judgment Act; (2) nominal damages, injunctive, and
> equitable relief under 42 U.S.C. § 1983; and (3) compensatory,
> injunctive, and equitable damages as a "private right of action for
> injunctive relief and equitable relief" **under *Bivens*.**"(emphasis added)

The district court erred by focusing *exclusively* on addressing private right

assertions as being "under *Bivens*" and not as private right equitable claims

under unconstitutional conditions or under third party coercion seeking an

injunction. That is, the district court did not address the entirety of "private right"

claims that were actually pled by the complaint. The "private right" claim pled by

CLARK did not exclusively plead a "*Bivens* claim" and specifically referred to

*Bivens* denoted as *an example* (**e.g.**) of private rights - See Complaint(ECF 1) at 6 :

> "See, **e.g.**, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S.
> 388 (1971) noting that "where federally protected rights have been
> invaded, it has been the rule from the beginning that courts will be
> alert to adjust their remedies so as to grant the necessary relief." See
> *Bell v. Hood*, 327 U.S. 678, 684 (1946)." (emphasis added)

CLARK sought and pled alternative legal theories for private right equitable relief

including under the private right forms seen in the *Bell v. Hood* vein of private

right forms - of which *Bivens* is only one **example** *among others*, including that

*Bell v. Hood* rested on *Philadelphia Co. v. Stimson*, 223 U.S. 605 (1912) which

covers a private right for unconstitutional conditions, such as when the right stems from an unconstitutional statute. And *Bantam Books, Inc.* v. *Sullivan*, 372 U. S. 58, 67 (1963) makes clear that the statute can be unconstitutional even if it is being indirectly enforced by a private third party through coercion of law.

> "While the general rule is that equity has no jurisdiction over the prosecution of crimes, it may, when it is essential to the protection of property rights, as to which the protection of a court of equity has already been invoked, enjoin the institution of criminal actions involving the same legal questions.

> An officer transcending the limits of his authority under a constitutional statute may inflict ***similar injuries*** on property *or **individuals*** as though he were **proceeding under an unconstitutional statute**, and, in either event, equity may intervene to <u>restrain</u> unfounded prosecutions." *Philadelphia Co. v. Stimson* at 606 (all emphases added).

This is a root vein of CLARK's equitable claims involving unconstitutional conditions and third party coercion. The complaint could hardly be more plain that "proceeding under an unconstitutional statute" is what the claim is about and what the facts alleged provide plausible support of that. While the complaint did not use the magic words "unconstitutional conditions" or "third party coercion", it did plainly expound that legal basis at length in a section of the complaint labeled as "*THE NICS FIREARM REGULATION APPLIES TO INDIVIDUAL CITIZENS*" which contains the following and is repeated here as argument in support that CLARK did plead legally cognizable claims concerning unconstitutional conditions and third party coercion:

17

"It may be argued that the NICS background check is a restriction placed upon individuals by an the FFL private actor and not the government but that is belied by the coercive hand of the government's involvement in the restriction being a provision of law. Not only does mere enactment of law demonstrate involvement, but 18 U.S.C. §922 (t)(5) underscores that involvement by providing, in pertinent part, that "[i]f the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection with respect to the transfer" [...] "the Attorney General may, after notice and opportunity for a hearing, suspend for not more than 6 months or revoke any license issued to the licensee under section 923, and may impose on the licensee a civil fine of not more than $5,000."

The provisions of law enacted by Congress are, on their face, directed toward ensuring that, at a minimum, all individual citizens seeking to purchase a firearm from an FFL are subjected to a background check and could, depending on a given State's implementation, also be subject to passing firearm training courses, etc., in order for the statutory requirement to be met. Thus, while the burden of a background check is foisted upon the individual citizen directly by the FFL, that is no different than the government itself burdening the individual citizen as recognized by the well established constitutional maxim that the government cannot do indirectly what it is not permitted to do directly ("*Quando aliquid prohibetur ex directo, prohibetur et per obliquum*") . To be certain, the civil penalty provision need not even exist to determine that enactment of the provisions in subsections 922(t)(1)(A&B) is an indirect action of Congress which places restrictions on the keeping and bearing of firearms by all law-abiding responsible citizens when making a purchase of a firearm through an FFL. The mere enactment of those requirements into federal law carries the inherent coercion associated with the public reputation of an FFL if the FFL was to be found operating in violation of federal law. Even without specific explicit civil penalties, the implementation of those provisions operates on all law-abiding responsible citizens the same as it operates upon law-breaking citizens. This type of indirect restriction on keeping and bearing arms would be little different than if, hypothetically, Congress enacted an indirect restriction on speech, such as a provision in Section 230 of the Telecommunications

Decency Act ("230 Act") which required (i.e., by federal law) that certain private businesses (i.e., speech platform providers taking advantage of the Act's immunity protections) take steps to delete, remove or suppress (i.e., censor) any content on their platforms which express negative viewpoints about a certain subject matter. Would such a provision of law be considered to be only a business regulation rather than also being an indirect act of Congress which restricts the content of protected speech of individual law-abiding responsible citizens? Such incidental burdens (censorship) on speech (coerced by provisions of law) would be subject to First Amendment constitutional review even though it is an indirect means employed to reach the speech used by the people (individual citizens including all individual law-abiding responsible citizens). Likewise, though not hypothetical, the requirements of law on FFLs which require NICS background checks on individuals must be subject to Second Amendment constitutional review. No other enumerated fundamental right requires a background check in order to exercise the right. Is the problem of using speech to incite riots just a different public policy balance or is that in recognition that the First Amendment takes some policy consideration off the table? Or is it that the current political climate favors firearm restrictions over speech restrictions?

Of note, with sufficient coercion by the government whether through direct or indirect means, a business can become a "state actor" for purposes of liability. It is currently unknown by CLARK whether there are immunity provisions for FFLs concerning private interference (tort) with the liberty rights of another, but if there were such provision, such as that seen the "230 Act", that would indicate that Congress understood that such law might subject the FFLs to liability as state actors for the violations of an individual's constitutional rights." (ECF 1 at 22-24)

Further, in *Philadelphia Co. v. Stimson*, the court wrote,

"If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its **resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States.** The exemption of the United States from suit does not protect its officers from personal liability to

persons whose rights of property they have wrongfully invaded. *Little v. Barreme,* 2 Cranch 170; *United States v. Lee,* 106 U. S. 196, 106 U. S. 220-221; *Belknap v. Schild,* 161 U. S. 10, 161 U. S. 18; *Tindal v. Wesley,* 167 U. S. 204, 167 U. S. 42 L. ed. 137; *Scranton v. Wheeler,* 179 U. S. 141, 179 U. S. 152. And **in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process.**" *Id.* at 619-620 (all emphasis added).

Additionally, the court went on to write:

"The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. *Osborn v. Bank of United States,* 9 Wheat. 738, 22 U. S. 843, 22 U. S. 868; *Davis v. Gray,* 16 Wall. 203; *Pennoyer v. McConnaughy,* 140 U. S. 1, 140 U. S. 10; *Scott v. Donald,* 165 U. S. 107, 165 U. S. 112; *Smyth v. Ames,* 169 U. S. 466; *Ex Parte Young,* 209 U. S. 123, 209 U. S. 159-160; *Ludwig v. Western Union Telegraph Co.,* 216 U. S. 146; *Herndon v. C., R.I. & P. Ry. Co.,* 218 U. S. 135, 218 U. S. 155; *Hopkins v. Clemson College,* 221 U. S. 636, 221 U. S. 643-645. And it is **equally applicable to a federal officer acting in excess of his authority or under an authority not validly conferred.** *Noble v. Union River Logging R. Co.,* 147 U. S. 165, 147 U. S. 171-172; *School of Magnetic Healing v. McAnnulty,* 187 U. S. 94.

**The complainant did not ask the court to interfere with the official discretion** of the Secretary of War, but **challenged his authority to do the things of which complaint was made.** The suit rests upon the charge of abuse of power, and its merits must be determined accordingly; it is not a suit against the United States." *Ibid.* (all emphasis added)

The present complainant, CLARK, did not ask the court to interfere with the official discretion of the Attorney General or the Unknown Government Agents, but challenged their authority to do the things of which complaint was made noting specifically how CLARK was aggrieved by the acts and what remedy

would appropriately address that grievance. CLARK's claim to equitable relief

essentially rests upon abuse of power (i.e., exercise of power under an

unconstitutional statute),"and its merits must be determined accordingly".

    While a *Bivens* claim and CLARK's other equitable injunctive claims stem

from equity and are private rights of action, a *Bivens* claim seeking monetary

damages differs from an unconstitutional conditions claim seeking only injunctive

relief aimed at addressing the ongoing circumstances that impose the ongoing

looming threat of violating individual rights. In the very first statement of the

complaint, CLARK sought equitable relief:

> "Plaintiff, Eric S. Clark (hereafter "CLARK") appears before this
> Court to file this COMPLAINT, requesting legal and equitable relief
> for unconstitutional conduct committed by unknown government
> agents and the Attorney General of the United States (hereafter
> collectively referred to as "Defendants"). ECF 1 at 1

And the complaint then also intimated that the equitable relief should include

prospective relief (future looking). See ECF 1 at 3:

> "This is a civil action seeking legal and equitable relief for
> infringement of CLARK's constitutionally protected fundamental
> right to keep and bear arms for which Defendants actions have caused
> and likely will continue to cause."

CLARK generally sought "private right of action for injunctive relief and equitable

relief." (ECF 1 at 4) and more specifically sought :

> "Under private right of action, *for compensatory damages, injunctive*
> *relief and equitable relief,* CLARK seeks compensatory damages, an

injunction against the deprivation of his rights protected under the
Second Amendment to the federal Constitution and seeks such further
equitable relief the court deems appropriate. " (ECF 1 at 4-5)

That CLARK may not obtain monetary damages as a "*Bivens* claim" does not

mean that CLARK may not obtain equitable relief in the form of an injunction as a

*Bell v. Hood* or a *Bantam Books* type of claim – against the United States (i.e.,

official capacity claims).

The district court found that "[e]xpanding *Bivens* to this new Second

Amendment context is a disfavored judicial activity that is virtually impermissible

under *Egbert*." (ECF 22 at 17) but, again, this focuses exclusively on a *Bivens*

claim and there is no need to be "[e]xpanding *Bivens*" (though the court could)

when *Bantam Books* already covers the context and; equity claims under the

*Ex Parte Young* exception are not barred by sovereign immunity.

In summation, by errantly addressing CLARK's private right of action

*exclusively* as a "*Bivens* claim" as opposed to a type of private right in the

broader vein of *Bell v. Hood*, the district court erroneously concluded that

"without a cognizable claim under § 1983 or *Bivens*, Plaintiff could not assert a

claim under the Declaratory Judgment Act." (ECF 38 at 1-2) That was clearly

erroneous because with a cognizable unconstitutional conditions (or third party

coercion) claim (such as under *Bantam Books*), that such claim provides standing

and would also allow for the additional assertion of claims under the Declaratory

22

Judgment Act as pled in the complaint.

**ISSUE 2:**

**The district court erred in an alternative ruling that there was failure to state a claim.**

The district court offered:

> "Assuming, *arguendo*, that Plaintiff has standing, the Court finds that his claims would be subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." (ECF 22 at 13)

This ruling effectively repeats the same error of **ISSUE 1** above by stating that:

> "Plaintiff alleges claims under § 1983, *Bivens*, and the Declaratory Judgment Act. As described below, even if Plaintiff has standing, this case must be dismissed because he fails to allege facts that would support plausible claims under any of these avenues for relief." (ECF 22 at 14)

and stating that:

> "Because Plaintiff fails to offer a cognizable substantive claim for relief under either § 1983 or *Bivens*, his request for declaratory relief is unavailable." (ECF 22 at 17)

These statement fail to acknowledge that there is an avenue for relief apart from

those three mentioned by way of an equitable claim to prospective relief for

unconstitutional conditions and/or third party coercion that fall within the

*Ex Parte Young* exception to sovereign immunity.

Because there was an avenue for relief and the alleged facts of the complaint

were sufficient to show plausibility of an equitable claim, the district court

23

dismissal of that claim is reversible error, i.e., an error of law.

**ISSUE 3:**

**The district court erred by misapprehending the basis of a claim to a Second Amendment violation.**

"We review issues of standing *de novo*, accepting as true all material allegations of the complaint, and . . . construing the complaint in favor of the complaining party." *Winsness*, 433 F.3d at 732 (quotations and brackets omitted) (ellipsis in original).

Misapprehending the complaint cannot reasonably be view as "construing the complaint in favor of the complaining party." A *length of time* delay for purchasing a firearm was pled in the complaint as a basis for a Second Amendment violation but was misapprehended by the district court as a legal theory about completely prohibiting purchase of a firearm. The order stated that "[t]he Court agrees with Defendants that Plaintiff fails to plausibly allege that FBI officials' responses to his background checks *prevented* him from purchasing firearms." ECF 22 at 10. (emphasis added)  The core of the misapprehension is that of being prevented from purchase rather than being prevented from purchase *in a timely manner*. See ECF 1 at 2 (emphasis added):

> "CLARK was prevented from making those purchases *in a timely manner* solely because of Defendants' enforcement of the statutes

24

found at 18 U.S.C. §922(t) which is an infringement on CLARK's fundamental right to keep and bears arms which is protected by the Second and Fourteenth Amendments of the Federal Constitution and; is a violation of CLARK's right to Due Process which is protected by the Fifth and the Fourteenth Amendments of the Federal Constitution."

Being completely *prevented* from purchase of a firearm need not be alleged to have standing based on *time delay* in purchasing/acquiring a firearm. A time delay in seeking to purchase a firearm is sufficient to injure one's ability to exercise the right to keep and bear arms. And, if that time delay is at a critical time, it could also cause deadly results. That is, "the law's waiting period could well be the critical time in which the applicant expects to face danger. So the temporary deprivation that Plaintiffs allege is a facially plausible Second Amendment violation." *Maryland Shall Issue, Inc. v. Wes Moore*, published opinion in appeal No. 21-2017 issued 11/21/2023.

The misapprehension of the basis of the Second Amendment violation claim resulted in the district court not drawing reasonable inferences toward, or consistent with, the time delay theory and, instead, finding allegedly reasonable inferences consistent with the misapprehended legal theory. In other words, factual allegations of various time delays were overlooked by the district court due to drawing inferences in keeping with a different legal theory. See from the motion to

set aside judgment(ECF 25), "STANDING analysis did not properly address *time delay* in exercising the right to purchase a firearm as opposed to being completely *prevented* from purchasing a firearm." ECF 25 at 1 (emphasis in original)

The district court order addressing this issue of misapprehension (i.e., § 922(t) causing time delays for CLARK's purchase of firearms from FFLs, not necessarily complete prohibition on CLARK's purchase of firearms from FFLs) did not appear to address the issue conclusively in that the district court merely assumed that the proper understanding of the claim would be cognizable but then turned to reliance on the same issue as in ISSUE 1 above as providing reason that the complaint must be dismissed anyway. The district court's only substantive mention was an assumption in its order of May 30, 2024 :

> "Plaintiff argues that the Court failed to sufficiently address his claimed injury based on the delay associated with the background check process. **Assuming** that the Court erred by neglecting to find Plaintiff suffered an injury-in-fact due to the delay associated with the FBI's background check system, it would still have dismissed his case because Plaintiff failed to state a claim upon which relief can be granted under *Bivens* and the Declaratory Judgment Act, as discussed below." ECF 38 at 8 (bold emphasis added)

On appeal, rather than assuming whether or not the district court erred in misapprehending the basis for a Second Amendment claim, it should be affirmatively determined.

Even if accepted as true that CLARK was not permanently *prevented* from purchasing any firearms, the district court did not properly address the

plausibility that the allegations of time delay(s) in exercising the right to purchase

a firearm, alone, can provide concrete injury for standing. Further, if the district

court concluded (implicitly or otherwise) that mere time delay alone in purchasing

a firearm can never be a valid basis to show standing for a violation of the right to

keep and bear arms, then that conclusion would be an error of law in addition to

failing to use of the proper analysis for such determination. A n variety of

constitutional violations are routinely recognized as triggering irreparable harm

unless they are promptly remedied. *See, e.g., Elrod v.Burns*, 427 U.S. 347, 373

(1976) (loss of constitutional "freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury"). As held in *McDonald v. City of

Chicago*, 561 U.S. 742 (2010), "it is clear that the Framers and ratifiers of the

Fourteenth Amendment counted **the right to keep and bear arms among those

fundamental rights** necessary to our system of ordered  liberty." (emphasis

added) This well established concept that loss of constitutional freedoms, for even

 minimal periods of time, unquestionably constitutes irreparable injury can be seen

in the Complaint under the section titled as "DE MINIMUS VIOLATION OF A

FUNDAMENTAL RIGHT". See ECF 1 at 80-84.

Delays for periods of time above "zero time" is the central basis of

CLARK's claim concerning 922(t). The district court (and this court of appeals)

cannot know how much delay is permissible under the Second Amendment in relation to 922(t) without going to the merit analysis and would rest on developed facts. That merits question is irrelevant for stating a claim and even irrelevant to a standing analysis aside from the existence of some time delay longer than "none". Because of the misapprehension identified herein concerning uses of the term "delay", the order did not acknowledge that, regardless of not being permanently prevented from purchasing a firearm, the *time delay* in purchasing a firearm, alone, provides plausibility of actual injury through causing Plaintiff's inability to exercise his right to keep and bear arms for some period of time.

**ISSUE 4:**

**The district court erred by concluding there was not a credible threat of enforcement of § 922(g)(3) and § 922 (k) provisions against CLARK.**

This appellate court reviews questions of standing de novo. *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008). "We review issues of standing *de novo*, accepting as true all material allegations of the complaint, and . . . construing the complaint in favor of the complaining party." *Winsness*, 433 F.3d at 732 (quotations and brackets omitted) (ellipsis in original). "The standard – encapsulated in the phrase 'credible threat of prosecution'-is quite forgiving." *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir.

1996).

In reference to §§ 922(k) and (g)(3), the district court concluded, in error, that "[w]hile Plaintiff meets the first part of the injury test with respect to his pre-enforcement challenges—he alleges an intention to engage in courses of conduct arguably affected with a constitutional interest but proscribed by the statute—he fails to allege a credible threat of prosecution." (ECF 22 at 12) and; that CLARK "failed to allege sufficient facts to suggest he would be prosecuted under either § 922(k) or (g)(3)" (ECF 38 at 9).

For plaintiff COAST (See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)), enforcement against similar conduct of another party (SBA) reached to the level of credible threat. Thus, for CLARK, when others have been prosecuted for both § 922(k) and (g)(3) which prohibit the same or similar conduct that CLARK seeks to engage in, that too reaches to the level of being a credible threat and; the complaint offered facts about such prosecutions of others including a criminal case for § 922(k):

> "federal court decision in the Southern District of the United States District Court for West Virginia case No. 2:22-cr-00097 Opinion and Order issued October 12, 2022 which contained in pertinent part:
>
>> 'The burden falls on the Government to "affirmatively prove that its firearms regulation is part of the [or analogous to a] historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. The Government has

not done so here, and I have no choice but to find
18 U.S.C. § 922(k) unconstitutional." *Id.*'
ECF 1 at 94

And the complaint also offered facts about such prosecutions of others including

two criminal cases for § 922(g)(3):

> 'On Feb. 3, 2023, the United States District Court for the Western
> District of Oklahoma, in *United States v. Harrison*, Case No. CR-22-
> 00328-PRW, issued an Order(Dkt. 36) granting a motion to
> dismiss(Dkt. 17) with prejudice on grounds that 18 U.S.C. § 922(g)(3)
> is unconstitutional and declining to reach vagueness claim (being
> unnecessary).

> On April 6, 2023, the United States District Court for the Western
> District of Texas, in *United States v. Connelly*, Case No. 3:22-cr-
> 00229-KC, issued an Order(Dkt. 101) stating that "§ 922(d)(3) does
> not withstand Second Amendment scrutiny for much the same reasons
> that § 922(g)(3) does not."'
> ECF 1 at 90

The defendants had argued that "pre-enforcement challenges require a case to be

ripe enough such that a Plaintiff would almost certainly face prosecution if they

engaged in the prohibited conduct" . While the sentiment of the defendants was

correct about the standing and ripeness issue, the assertion that such requires that a

plaintiff "would almost certainly face prosecution" (ECF 12 at 21) is an

unsupportable stretch. In rebuttal to that argument, CLARK stated that

> "18 U.S.C. 922(g)(3) is currently being enforced in cases too
> numerous to mention. The case of *United States v. Patrick
> Darnell Daniels, Jr.* being one recently prosecuted case. See
> United States District Court for the Southern District of
> Mississippi, No. 1:22-CR-58-1. That particular case was taken

30

on appeal to the Fifth Circuit of the United States Courts of
Appeals (No. 22-60596). On August 9, 2023, the Fifth Circuit
stated "**we hold today that 18 U.S.C. § 922(g)(3)**, a decades-
old felony provision of our federal firearms law, is
**unconstitutional** as applied to Mr. Daniels"(emphasis added)."
ECF 13 at 6

The district court indicated that criteria for standing for was met except for a

credible threat of future enforcement. See ECF 22 at 12, "While Plaintiff meets the

first part of the injury test with respect to his pre-enforcement challenges—he

alleges an intention to engage in courses of conduct arguably affected with a

constitutional interest but proscribed by the statute—**he fails to allege a credible**

**threat of prosecution.**"(emphasis added)  That portion was an errant conclusion.

In *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), the Supreme Court adduced

only three reasons why a threat was credible. First, There was "a history of past

enforcement against nearly identical conduct". Second, the government "decline[d]

to disavow future enforcement" proceedings against the specific plaintiff. In the

present case, the first and second are obviously met since the complaint identified

contemporaneous historical enforcement of both 18 U.S.C. § 922(g)(3) (See ECF

1 at 90) and 18 U.S.C. § 922(g)(k) (See ECF 1 at 94) and the record demonstrates

by omission that the defendants have not disavowed future enforcement of any

provisions at issue. As to the third, the federal prosecutorial staff is quite large

and further enlargement would make little or no effect on whether any particular

case would get prosecuted and, as such, is not distinguishable to find a lack of credible threat.

The district court noted that "[i]n the absence of contemporary enforcement, . . . a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'" (ECF 22 at 11) But in the present case, as provided above, there is no absence of contemporary enforcement rather there is only absence of contemporary enforcement specifically against CLARK personally because of his self restraint to keep from risking prosecution. In *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979), the Supreme Court found standing on behalf of plaintiffs who had not personally been subjected to past enforcement or specific threats of enforcement and in the absence of a background of regular enforcement. The government defendants had argued that there was lack of standing because the law "may never be applied" in the manner the plaintiffs feared. *Id.* at 301–02. The Court rejected that argument, reiterating that unless a plaintiff's fear of prosecution is "imaginary or wholly speculative," allowing a challenge is appropriate. *Id.* at 301 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). The Act on its face arguably applied to the conduct the plaintiffs wished to engage in, and the state had "not disavowed" enforcing the statute, leaving the union with "some reason in fearing prosecution." *Id.*

32

at 302.

When the provisions, such as 18 U.S.C. §922(g)(3) and 18 U.S.C. §922(k) have been enforced contemporaneously against others (and notably contain heavy criminal penalties), there is plainly "some reason to fear prosecution".

The district court itself noted a previous contemporaneous enforcement of the provision against someone other than CLARK at ECF 22, footnote 43. And the district court  noted that "[a]s for § 922(g)(3), Plaintiff concedes that he has not yet purchased a controlled substance in a state where it is legal (as his Complaint alleges he intends to do at a future time), and he has not alleged that there was past enforcement of this statutory provision **against him**." (emphasis added) and; in regard to 18 U.S.C. §922(k), the district court also similarly stated that "There has been no past enforcement of this provision **against him**," ECF 22 at 13 (emphasis added). Similarly, in response to the motion to set aside judgment, defendants(not the court)  had argued, in reference to § 922(g)(3) that

> "Clark readily admits he has not yet purchased a controlled substance. And the Complaint does not contain any allegation of past or future enforcement of this statutory provision **against him**." (ECF 30 at 8) (emphasis added)

and likewise defendants argued, in relation to § 922(k) that

> "Clark also, again, failed to allege in his Complaint that there was some past or future enforcement of this statutory provision **against him**." […] "The Complaint does not contain any

allegation of past or future enforcement of this statutory
provision **against him**." (ECF 30 at 8) (emphasis added)

In reply, CLARK argued that

> 'This "against him" is irrelevant as CLARK need not personally risk
> criminal prosecution to challenge the provision unless Defendant has
> disavowed any intention of invoking the provision against him.
> CLARK shows an intention to engage in conduct arguably affected
> with a constitutional interest but that the statute proscribes and the
> threat of prosecution is generally credible where a challenged
> provision on its face prohibits the conduct in which plaintiffs wish to
> engage, and the government has not disavowed any intention of
> invoking the provision against them. *United States v. Supreme Court
> of New Mexico*, 839 F.3d 888, 901 (10th Cir. 2016); *Babbitt v. United
> Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979); see, e.g.,
> *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (plaintiffs
> alleged credible threat of prosecution where government did not argue
> plaintiffs would not be prosecuted if "they do what they say they wish
> to do"); *Cressman v. Thompson*, 719 F.3d 1139, 1145 (10th Cir. 2013)
> (threat of prosecution credible where state officials informed plaintiff
> he could be prosecuted for disobeying challenged statute).'
> ECF 32 at 5-6

The relevant standard for pre-enforcement challenges "sets a low threshold and is

quite forgiving to plaintiffs seeking [such] preenforcement review," *Cayuga

Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). "Where a statute specifically

proscribes conduct, the law of standing does not place the burden on the plaintiff to

show an intent by the government to enforce the law against it." *Tweed-New

Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) ( (internal quotation

marks omitted)). No specific threat of enforcement against CLARK is necessary to

confer standing. See *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71

(2d Cir. 2019) rejecting the claim that "standing [was] not available . . . because [the State] has made no overt threat to enforce the [s]tatute"). Requiring an overt threat to enforce a statute would run afoul of the Supreme Court's admonition not to put "the challenger to the choice between abandoning his rights or risking prosecution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (internal quotation marks omitted) The U.S. Supreme Court has also set out that plaintiffs need not "demonstrate that it is literally certain that the harms they identify will come about" to establish standing. *Clapper* v. *Amnesty Int'l USA*, 568 U. S. 398, 414, n. 5 (2013). And the Supreme Court has held that a *credible threat* of enforcement of a statute can suffice for injury-in-fact even where plaintiffs did not confirm that their future speech would violate the law. See *Susan B. Anthony v. Driehaus*, 134 S. Ct. 2334, 2338 (2014).

In other words, a *credible threat* of enforcement can be shown where the statute at issue prohibits the activity the plaintiff wishes to engage in and the potential for enforcement has not been disavowed. See *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016). And past activities are not indispensable to finding standing. See *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006). Because the harm of self-abstention "can be realized even without an actual prosecution," it has been held that pre-enforcement challenges

are justiciable so long as the "fear of criminal prosecution under [the] allegedly unconstitutional statute is not **imaginary** or **wholly** speculative," *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 302 (1979)(emphasis added). The court also intimated that such threat of enforcement would not be imaginary or *wholly* speculative if it were remotely possible (i.e., plausible) such as when some other party has engaged in similar conduct and enforcement action was taken against that other party. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)("we find that both SBA and COAST have alleged a credible threat of enforcement.") and see *Steffel v. Thompson*, 415 U. S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); see also *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) (holding that the ripeness doctrine permits judicial review of a regulation if there is a purely legal issue involved and a direct, immediate impact on the party seeking to challenge the regulation); see also *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974) (finding a claim ripe even though the injury was not imminent because the "injurious event [was] certain to occur").

The coerced restraint doctrine (a.k.a. "chilling effect"), which holds that coerced restraint is a cognizable Article III injury, is an outgrowth of the notion that federal courts will exercise equity jurisdiction to hear a challenge that arguably

36

infringes federal rights. Denying judicial review would force CLARK to choose

between refraining from firearm restoration for self defense purposes and

refraining from medical use of marijuana for pain management relief on the

one hand, or engaging in those activities and risking criminal prosecution on the

other hand. Judicial review is called for by numerous principles embodied by

the constitution.

## CONCLUSION

At minimum, this Court of Appeals should reverse and remand with instructions

that CLARK has standing to proceed on all of the claims in the complaint.

Respectfully submitted,

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests that this Court hear oral argument.

As some judges within the Tenth Circuit may lack a good grasp on the constitutionally distinct area of equitable claims, expounding orally on the difference in the principles and characteristics of courts wielding equity power to assist in providing guidance on the nature of pleading equity claims -- could help effectively disseminate how to understand the historical grievance and remedy intervention contemplated by the constitution's demand that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution". While equity may be a step child of Law, it should not become the forgotten step child.

Respectfully submitted,

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

# CERTIFICATE OF COMPLIANCE

## with required PRIVACY redactions.

Appellant hereby certifies that:

All required privacy redactions have been made to the Appellant's brief.

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

## CERTIFICATE OF COMPLIANCE

### with Type-Volume Limit
### and with Typeface and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App.

   P.32(a)(7)(B) because this brief contains **9,302 words**, excluding the

   parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App.

   P. 32(a)(5) and the type style requirements of Fed. R. App. P.

   32(a)(6) because this brief has been prepared in a proportionally

   spaced typeface using Microsoft Office Word 2007 (12.0.6787.5000)

   SP3 MSO (12.0.6607.1000) in  14 point Times New Roman.


**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

40

# CERTIFICATE OF SERVICE

Appellant hereby certifies that service was made by mailing

true and correct copies of the foregoing

BRIEF OF APPELLANT

by deposit in the United States Mail, Postage prepaid,

on July 15, 2024 addressed to:

Christopher Allman
500 State Ave., Suite 360
Kansas City, KS 66101

and

Brian E. Vanorsby
1200 Epic Center
301 N. Main
Wichita, Kansas 67202

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

41

No. 24-3088

---

**United States Court of Appeals
for the Tenth Circuit**

---

**Eric S. Clark**
Plaintiff-Appellant
v.
**Attorney General of the United States of America
Merrick Garland, et al.**
Defendants-Appellees

---

Appeal from the U.S. District Court
for the District of Kansas
The Honorable Julie A. Robinson, United States District Judge
( 23-cv-02170-JAR-RES )

---

**ATTACHMENT**

FOR
BRIEF OF APPELLANT
**( pertinent written orders )**

ECF 22 - **MEMORANDUM AND ORDER  01/16/24 ( 18 pages )**

ECF 38 - **MEMORANDUM AND ORDER  05/30/24 ( 12 pages )**

---

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC S. CLARK,

       **Plaintiff,**

       **v.**

                          Case No. 23-2170-JAR-RES

MERRICK GARLAND, et al.,

       **Defendants.**

### MEMORANDUM AND ORDER

    Plaintiff Eric S. Clark brings this action pro se challenging various provisions of 18

U.S.C. § 922 as violative of the Second Amendment, seeking damages as well as injunctive and

declaratory relief against Attorney General Merrick Garland and six unknown government

agents. Before the Court is Defendants' Motion to Dismiss (Doc. 12) under Fed. R. Civ. P.

12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted. The motion is fully briefed, and the Court is prepared to

rule. As described more fully below, the Court grants Defendants' motion to dismiss.

### I.    Legal Background and Factual Allegations

    The following facts are derived from the Complaint and attached exhibits. The Court is

mindful as it considers Plaintiff's submissions that he proceeds pro se, so it reviews his

"pleadings and other papers liberally and hold[s] them to a less stringent standard than those

drafted by attorneys."[1]

---

[1] *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

*Background Checks*

Congress enacted the Brady Handgun Violence Prevention Act of 1993 ("Brady Act") as an amendment to the Gun Control Act of 1968.[2]  It generally requires "a waiting period before the purchase of a handgun, and for the establishment of a national instant criminal background check system to be contacted by firearms dealers before the transfer of any firearm."[3]  As codified at 18 U.S.C. § 922(t), a licensed importer, manufacturer, or dealer is prohibited from transferring a firearm to an unlicensed person unless certain provisions of the statute are met, which include contacting the national instant criminal background check system.

As required by the Brady Act, the Attorney General "establish[ed] a National Instant Criminal Background Check System (NICS) to be contacted by any . . . licensed dealer of firearms for information as to whether the transfer of a firearm to any person who is not licensed under 18 U.S.C. 923 would be in violation of Federal or state law."[4]  The Attorney General also established "appeals procedures for persons who have been denied the right to obtain a firearm as a result of a NICS background check performed by the Federal Bureau of Investigation (FBI) or a state or local law enforcement agency."[5]

One district court recently summarized the NICS system as follows:

> Under the NICS system, anyone seeking to obtain a firearm from an [Federal Firearms Licensee ("FFL")] first must complete ATF Form 4473, which requires, among other things, attestation that the prospective transferee is not prohibited under federal, State, tribal, or local law from possessing or receiving a firearm.  *See* 18 U.S.C. § 922(s)(1)(A)(i)(I), (s)(3)(B); 27 C.F.R. § 478.124(a).  The FFL then relays to NICS the prospective transferee's name and certain other identifying information.  27 C.F.R. § 478.124(c)(1)–(2); 28

---

[2] Pub. L. No. 103-159, 107 Stat. 1536.

[3] *Id.*

[4] 28 C.F.R. § 25.1.

[5] *Id.*

C.F.R. §§ 25.6(b), 25.7(a). An examiner with NICS then conducts a criminal background check using three national databases: (1) the National Crime Identification Center ("NCIC"); (2) the Interstate Identification Index ("III"), which contains criminal history records; and (3) the NICS Index, which contains information on prohibited persons, as defined under either federal or state law. *See* 28 C.F.R. §§ 25.6(c)(1)(iii), (f). Once these checks are run, if the prospective transferee is twenty-one or older, NICS sends one of three responses to the FFL: (1) proceed; (2) denied; or (3) delayed. *Id.* § 25.6(c)(1)(iv). If the FFL receives the "delayed" response, the FFL may complete the firearm transfer once either (a) NICS sends a follow-up "proceed" response, or (b) three business days have elapsed since the FFL received the "delayed" response, and NICS has not sent a follow-up "denied" response. *Id.* § 25.6(c)(1)(iv)(B).[6]

In 2003, Plaintiff Eric Clark was convicted of a felony in Kansas and briefly imprisoned. Plaintiff was released on May 4, 2003, and his rights were restored about ten years later, on May 5, 2013. He has attempted to purchase firearms several times since his rights were restored at various FFLs, but on many of these occasions, his NICS background check was denied or delayed.

The Complaint lists the following dates of denial and delay decisions: February 29, 2016; July 17, 2019; June 15, 2021; January 26, 2023; March 8, 2023; and April 5, 2023. Plaintiff provides details regarding a few of these dates when he was either denied or delayed. For example, on June 15, 2021, Plaintiff tried to purchase a firearm at an FFL and filled out ATF Form 4473. The request was initially denied. Plaintiff appealed, and on August 27, 2021, the FBI sent Plaintiff a letter explaining that it had reviewed his eligibility and determined that he was in fact eligible to possess or receive a firearm, and enclosed the FBI's Criminal Justice Information Services ("CJIS") Division Firearm-Related Challenge Certificate. The letter directed Plaintiff to take the certificate to the FFL who initiated the background check to

---

[6] *McRorey v. Garland*, No. 23-CV-00047, 2023 WL 5200670, at *1 (N.D. Tex. Aug. 14, 2023).

complete the transaction.  The letter further explained that if more than thirty days elapsed since the original application, the FFL must recheck the NICS before allowing the transfer.  It also provided him with instructions to apply for a separate procedure to avoid denials and delays in the future—the Voluntary Appeal File ("VAF").  Under this procedure, the letter explains, an individual can request that the NICS retain information that would prevent future extended delays or erroneous denials during the background check process.

Plaintiff tried to purchase the same firearm from the same FFL on September 15, 2021.  Since more than thirty days had passed since his original NICS check, the FFL again submitted ATF Form 4473.  This time, the FFL received a "delayed" response.  The FFL refused to sell the firearm to Plaintiff, but indicated that he could purchase the firearm on or after September 21, 2021.  Plaintiff does not allege whether he in fact purchased the firearm.

In January or February 2023, Plaintiff sought to acquire a firearm from an FFL but terminated the purchase when he was informed that a deposit was required before the NICS check, and that if the FFL received a "denied" response, Plaintiff would be required to pay a $50.00 processing fee.  Plaintiff would like to "purchase lawful firearms more frequently but for the near certainty of that exercise being futile because of the enforcement of 18 U.S.C. § 922(t)."[7]

### *Prohibition on Receipt of Firearm by Unlawful Drug User*

Another provision of § 922 makes it unlawful for a person "who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to receive any firearm or ammunition which has been shipped or

---

[7] Doc. 1 ¶ 33

4

transported in interstate or foreign commerce."[8]  Plaintiff has residual pain from a fall that

occurred in 2022, and "intends to use marijuana for potential pain relief in the future including in

a State where such use is lawful but is unlawful under Federal law.  [He] would have done so

already but for the potential enforcement of 18 U.S.C. § 922(g)(3)."[9]

### *Prohibition on Obliterated Serial Numbers*

Section 922(k) provides:

> It shall be unlawful for any person knowingly to transport, ship, or
> receive, in interstate or foreign commerce, any firearm which has
> had the importer's or manufacturer's serial number removed,
> obliterated, or altered or to possess or receive any firearm which
> has had the importer's or manufacturer's serial number removed,
> obliterated, or altered and has, at any time, been shipped or
> transported in interstate or foreign commerce.

Plaintiff intends to restore a rusty firearm that he plans to purchase out of state, which will

require him to alter or obliterate the firearm manufacturer's serial number in order to safely use it

for the purpose of self-defense in his home.

Plaintiff generally alleges that 18 U.S.C. § 922 is unconstitutional.  Specifically, he

claims that the background check provisions in § 922(t), the prohibition on possessing a firearm

"which has had the importer's or manufacturer's serial number removed, obliterated, or altered"

in § 922(k), and the prohibition on "an unlawful user of . . . any controlled substance" possessing

a firearm in § 922(g)(3) all violate the Second Amendment on their face and as applied to him.

Plaintiff seeks the following relief: (1) a declaration that the provisions at issue violate the

Second Amendment under the Declaratory Judgment Act; (2) nominal damages, injunctive, and

---

[8] 18 U.S.C. § 922(g)(3).

[9] Doc. 1 ¶ 17.

equitable relief under 42 U.S.C. § 1983; and (3) compensatory, injunctive, and equitable

damages as a "private right of action for injunctive relief and equitable relief" under *Bivens*.

## II.   Subject Matter Jurisdiction

### A.   Standards

Defendants first move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.  Lack of subject matter jurisdiction is a threshold defense that must be addressed

before any merits-based issues.[10]  Federal courts are courts of limited jurisdiction and must

therefore have a statutory or constitutional basis for exercising jurisdiction.[11]  The party seeking

to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is

proper,[12] and "[m]ere conclusory allegations of jurisdiction are not enough."[13]  The Court

addresses the following grounds for dismissal under Rule 12(b)(1) in turn: (1) sovereign

immunity, and (2) standing.  Because the Court finds it lacks jurisdiction on these grounds, it

need not consider Defendants' additional argument that certain claims under § 922(t) are moot.

#### 1.   Sovereign Immunity

Defendants invoke sovereign immunity, and argue that the United States has not

consented to suit for the claims lodged by Plaintiff in this case.  "Sovereign immunity is the

privilege of the sovereign not to be sued without its consent."[14]  "The basic rule of federal

sovereign immunity is that the United States cannot be sued at all without the consent of

---

[10] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[11] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[12] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[13] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

[14] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

Congress."[15]  "Federal courts generally deem a suit for specific relief, e.g., injunctive or declaratory relief, against a named officer of the United States to be a suit against the sovereign."[16]  When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding the government from suit.[17]  Therefore, Plaintiff "may not proceed unless [he] can establish that the United States has waived its sovereign immunity with respect to [his] claim."[18]

The Supreme Court in *Ex parte Young* carved out an exception to sovereign immunity where a plaintiff seeks prospective declaratory and injunctive relief for continuing violations of federal law by the State.[19]  To determine whether the *Ex parte Young* exception applies, this Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[20]  "*Ex parte Young* 'may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past.'"[21]

Plaintiff wholly fails to address sovereign immunity in his response to the motion to dismiss.  The Complaint states that jurisdiction is based on 28 U.S.C. § 1331, the general jurisdictional statute that confers original jurisdiction on federal courts for cases with federal

---

[15] *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).

[16] *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687–88 (1949)).

[17] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[18] *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010).

[19] 209 U.S. 123 (1908); *see Chilcoat v. San Juan County*, 41 F.4th 1196, 1213–14 (10th Cir. 2022) (citations omitted).

[20] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[21] *Chilcoat*, 41 F.4th at 1215 (quoting *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

questions.  This statute does not waive the United States' sovereign immunity.[22]  Likewise, the Declaratory Judgment Act does not waive sovereign immunity, and does not confer jurisdiction where it otherwise does not exist.[23]

Therefore, sovereign immunity bars Plaintiff's claims for monetary damages and for retrospective injunctive and declaratory relief against the United States.  Plaintiff's claims for prospective injunctive and declaratory relief against the federal officials named as Defendants in this case are covered by the *Ex Parte Young* exception to sovereign immunity.

### 2.    Standing

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  As the Supreme Court has explained, "[i]n limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."[24]  Similarly, the Declaratory Judgment Act permits, but does not require, the Court to "declare the rights and other legal relations of any interested party seeking such declaration" where there is "a case of actual controversy within its jurisdiction."[25]

For a claim to be justiciable under Article III, "it must present a live controversy, ripe for determination, advanced in a 'clean-cut and concrete form.'"[26]  One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of

---

[22] *Kansas ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226, 1240 (10th Cir. 2017).

[23] *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002).

[24] *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

[25] 28 U.S.C. § 2201(a).

[26] *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

standing.  That doctrine requires federal courts, before considering the merits of an action, to

"satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the

controversy" as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[27]  Standing

is evaluated based on the facts as they exist at the time the complaint is filed.[28]  At the pleading

stage, the Court "presumes that general allegations embrace those specific facts that are

necessary to support the claim,"[29] and "general factual allegations of injury resulting from the

defendant's conduct may suffice."[30]  Nonetheless, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."[31]

The Supreme Court has found the "irreducible constitutional minimum of standing"

contains three elements.[32]  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision."[33]  To be particularized, an injury "must affect the plaintiff in a

personal and individual way."[34]  To be concrete, the "injury must be '*de facto*'; that is, it must

actually exist."[35]  "An allegation of future injury may suffice if the threatened injury is 'certainly

impending,' or there is a 'substantial risk' that the harm will occur."[36]

---

[27] *Summers*, 555 U.S. at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[28] *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[29] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, (1957)).

[30] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[31] *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[32] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560).

[33] *Id.*

[34] *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

[35] *Id.* at 340.

[36] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)).

### a.    Past Purchases

As discussed above, Plaintiff's claims based on past firearm purchases are barred by the doctrine of sovereign immunity.  Defendants argue that Plaintiff also lacks standing to challenge the denials and delays associated with his past firearm purchases under § 922(t) because he has not shown a concrete and particularized injury.  Plaintiff alleges that he was injured by the series of denials and delays on his attempted firearm purchases since his rights were restored in 2013.

The Court agrees with Defendants that Plaintiff fails to plausibly allege that FBI officials' responses to his background checks prevented him from purchasing firearms.  Although Plaintiff refers to several dates when his NICS checks were denied or delayed,[37] he only provides details about four attempted purchases—three denials and one delay.  The three denials that he alleges were all reversed.  In 2016 and 2021, Plaintiff was notified that he was denied, but on appeal the FBI determined both times that he was eligible for purchase and sent him a certificate to present to the FFL.  And on August 21, 2018, although Plaintiff claims that his application was initially delayed and then denied, he alleges that sometime after that date, the NICS system placed him in a "proceed" status.[38]

In the 2021 letter granting his appeal, which is attached to the Complaint, the FBI also provided Plaintiff with instructions on applying for the alternate VAF procedure in order to avoid future denials and delays, including the web address for the application.  Plaintiff does not acknowledge these instructions in his Complaint or briefing.  Given his allegations that subsequent attempted firearm purchases were delayed or denied in 2023, the Court draws the reasonable inference that Plaintiff did not avail himself to the VAF option, which should have

---

[37] *See* Doc. 1 ¶ 29.

[38] *Id.* ¶ 27.

prevented future denials and delays of the kind Plaintiff describes in the Complaint. Therefore, the Court cannot find that the denials cited in the Complaint constitute concrete injuries because they were reversed upon appeal, and because Plaintiff was provided with a method to avoid future denials and delays.

Plaintiff also alleges injury due to purchases that were delayed by the background check system, but he fails to allege that the delays were followed up with a denial that would prevent him from purchasing a firearm altogether. And, he fails to identify the injury tied to this delay given that they were followed up with proceed responses. Moreover, Plaintiff could have prevented these instances of delay by using the FBI's VAF option, which was designed for individuals with past records who are nonetheless eligible to purchase firearms. Therefore, the Court finds that the delays in Plaintiff's firearm purchases, standing alone, do not constitute concrete injuries.

Thus, to the extent Plaintiff alleges injury based on his past attempted firearm purchases that were denied or delayed, the Court finds that he fails to allege facts to support the injury-in-fact element of standing.

### b.    Future Conduct

Plaintiff also argues that § 922(t) is unconstitutional because the failure of the NICS system to promptly return a correct background check response has chilled him from making firearm purchases in the future. The Supreme Court has "consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened enforcement, whether today or in the future," and "[i]n the absence of contemporary enforcement, . . . a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'"[39] In pre-

---

[39] *California v. Texas*, 593 U.S.--, 141 S. Ct. 2104, 2114 (2021) (citations omitted).

11

enforcement challenges such as those asserted by Plaintiff here, standing and ripeness "boil down to the same question."[40]  In such cases, the Supreme Court has counseled that "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'"[41]

While Plaintiff meets the first part of the injury test with respect to his pre-enforcement challenges—he alleges an intention to engage in courses of conduct arguably affected with a constitutional interest but proscribed by the statute—he fails to allege a credible threat of prosecution.  As for § 922(t), Plaintiff's allegations and the documents attached to his Complaint make clear that every attempt to appeal the denial of his NICS background check was granted, and that the delays usually progressed to a proceed status.  They also indicate that Plaintiff could have availed himself of an alternate VAF procedure that would reduce his risk of getting delays and denials due to his past criminal record, and that he was notified on how to use this procedure.  This undercuts, rather than supports, his claim of a credible threat of denial and delay associated with future intended firearm purchases.

As for § 922(g)(3), Plaintiff concedes that he has not yet purchased a controlled substance in a state where it is legal (as his Complaint alleges he intends to do at a future time), and he has not alleged that there was past enforcement of this statutory provision against him.[42]  Nor has Plaintiff alleged any other facts to support a credible threat of future enforcement.

---

[40] *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128, n.8 (2007)).

[41] *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

[42] *See id.* (explaining that "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974))).

In order for § 922(k) to apply to Plaintiff, he must first purchase a firearm that requires him to obliterate the manufacturer's serial number during the restoration process. According to the Complaint, he has not yet engaged in this conduct, nor does he allege that he has done so in the past. Additionally, Plaintiff fails to allege facts that he is subject to a credible threat of prosecution if he engages in his intended conduct.[43] There has been no past enforcement of this provision against him, nor does he allege any other facts that demonstrate a credible threat of prosecution.

In sum, the Court finds that Plaintiff fails to allege the injury-in-fact component of standing as to any of his claims.

## III.    Failure to State a Claim

Assuming, *arguendo*, that Plaintiff has standing, the Court finds that his claims would be subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### A.    Standard

To survive a motion to dismiss brought under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[44] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[45] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not

---

[43] *See, e.g., Vincent v. Garland*, 80 F.4th 1197, 1199 (10th Cir. 2023) (considering challenge by convicted felon prohibited from possessing a firearm under § 922(g)(1)); *United States v. Rahimi*, 61 F.4th 443, 449 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023) (considering this issue on appeal of conviction under § 922(g)(8)); *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023) (considering challenge to § 922(g)(3) on direct appeal by defendant convicted under the statute).

[44] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

suffice; a plaintiff must offer specific factual allegations to support each claim."[46]  Finally, the
Court must accept the plaintiff's factual allegations as true, view those facts in the light most
favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the
defendant is liable in light of the applicable law.[47]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of
a motion to dismiss, the court "must take all of the factual allegations in the complaint as true,
[but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[48]
Thus, the court must first determine if the allegations are factual and entitled to an assumption of
truth, or merely legal conclusions that are not entitled to an assumption of truth.[49]  Second, the
court must determine whether the factual allegations, when assumed true, "plausibly give rise to
an entitlement to relief."[50]  "A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."[51]

Plaintiff alleges claims under § 1983, *Bivens*, and the Declaratory Judgment Act.  As
described below, even if Plaintiff has standing, this case must be dismissed because he fails to
allege facts that would support plausible claims under any of these avenues for relief.

---

[46] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[47] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[48] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[49] *Id.* at 678–79.

[50] *Id.* at 679.

[51] *Id.* at 678.

14

B.    **Section 1983 and *Bivens***

Plaintiff names Attorney General Merrick Garland and six "unknown government agents," who he alleges are all FBI employees, as defendants in this matter.  42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution" by any person acting under the color of state law.[52]  Because Plaintiff alleges claims against federal officers only, he cannot state a claim for relief under § 1983.[53]  The "federal analog to a § 1983 suit" is a *Bivens* suit, "which provides a 'private action for damages against federal officers' who violate certain constitutional rights."[54]  A *Bivens* claim can only be asserted against federal officials in their individual capacities; it cannot be asserted against the United States or federal officials in their official capacities.[55]  Therefore, to the extent Plaintiff alleges *Bivens* claims against these Defendants in their official capacities, they must be dismissed as not cognizable.

Plaintiff's individual-capacity claims under *Bivens* are also not cognizable.  The Supreme Court has only recognized three such implied causes of actions over the past 50 years: (1) unreasonable search and seizure under the Fourth Amendment,[56] (2) gender discrimination under

---

[52] 42 U.S.C. § 1983.

[53] *See, e.g.*, *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016)) (explaining that the plaintiff must allege that a Defendant was "acting under color of state law" to state a claim for relief under § 1983).  Although Defendants do not invoke this argument in their motion to dismiss, *sua sponte* dismissal of a pro se claim under Rule 12(b)(6) is permitted "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir.1991)); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).  The Court finds that the § 1983 deficiency is patently obvious in this case and therefore addresses it despite Defendants failure to do so in the motion.

[54] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

[55] *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

[56] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

the Fifth Amendment against a Congressman by a member of his staff,[57] and (3) cruel and

unusual punishment under the Eighth Amendment by prisoners alleging failure to provide

adequate medical treatment.[58]  In *Ziglar v. Abbasi*, the United States Supreme Court held that

extension of *Bivens* liability beyond these three contexts is a "disfavored" judicial activity.[59]  The

Supreme Court affirmed this principle in *Hernandez v. Mesa* when it declined to recognize a

*Bivens* action for alleged Fourth and Fifth Amendment violations premised on a cross-border

shooting by a Border Patrol Agent at the United States-Mexico border.[60]  Most recently, in

*Egbert v. Boule*, the Supreme Court declined to find a *Bivens* cause of action for First

Amendment retaliation and Fourth Amendment excessive force.[61]  The Tenth Circuit has noted

the following lessons from *Egbert*:

> First and foremost, we are left in no doubt that expanding *Bivens* is
> not just "a disfavored judicial activity," it is an action that is
> impermissible in virtually all circumstances.  The Supreme Court's
> rejection of the plaintiff's Fourth Amendment claim, despite its
> close resemblance to the facts of *Bivens* itself, underscores the
> extent of the Court's disfavor towards *Bivens* claims.  Though the
> failure of that claim raises a question aptly posed by Justice
> Gorsuch—"[w]hen might a court ever be 'better equipped' than the
> people's elected representatives to weigh the 'costs and benefits'
> of creating a cause of action?"—we do not endeavor to answer that
> question here.  Instead, we emphasize what we view as the key
> takeaway from *Egbert*, namely, that courts may dispose of *Bivens*
> claims for "two independent reasons: Congress is better positioned
> to create remedies in the [context considered by the court], and the
> Government already has provided alternative remedies that protect
> plaintiffs."[62]

---

[57] *Davis v. Passman*, 442 U.S. 228, 248–49 (1979).

[58] *Carlson v. Green*, 446 U.S. 14, 19 (1980).

[59] 582 U.S. 120, 135 (2017) (citation omitted).)

[60] 589, U.S.--, 140 S. Ct. 735 (2020).

[61] *Egbert v. Boule*, 596 U.S. 482, 498–99 (2022).

[62] *Silva v. United States*, 45 F.4th 1134, 1140–41 (10th Cir. 2022) (quoting *Egbert*, 596 U.S. at 1803, 1804, 1809).

Expanding *Bivens* to this new Second Amendment context is a disfavored judicial

activity that is virtually impermissible under *Egbert*.[63]   The Court finds no authority to support

that the courts, as opposed to Congress, are better positioned to create remedies for the Second

Amendment violations asserted in Plaintiff's Complaint.   And, the regulations promulgating the

Brady Act already provide for an appeals process and an alternative VAF procedure to protect

individuals like Plaintiff with a criminal record who have a higher risk of delays and denials

during the background check process.   Therefore, to the extent Plaintiff alleges individual-

capacity claims against Defendants under *Bivens*, such claims are not cognizable and must be

dismissed.

### C.   Declaratory Judgment Act

Plaintiff's claims under the Declaratory Judgment Act ask the Court to deem

unconstitutional the provisions at issue in § 922, on their face and as applied to Plaintiff.   First,

the Court notes that "[a] declaratory judgment is meant to define the legal rights and obligations

of the parties in anticipation of some future conduct, not simply to proclaim liability for a past

act."[64]   Therefore, declaratory relief is improper to the extent Plaintiff seeks a declaration about

Defendants' past conduct in running background checks when he attempted to purchase firearms.

Moreover, declaratory relief "presupposes the existence of a judicially remediable right."[65]

Because Plaintiff fails to offer a cognizable substantive claim for relief under either § 1983 or

*Bivens*, his request for declaratory relief is unavailable.

---

[63] *See id.*; *see also Cronk v. FBI*, No. 22 CV 51, 2023 WL 6064925, at *2 (N.D. Ind. Sept. 18, 2023) ("Indeed, only a handful of courts have even addressed the question, with all of them declining to extend *Bivens* into the Second Amendment context.").

[64] *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (citation omitted).

[65] *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).

### D.    Leave to Amend

While the Court recognizes the general rule that pro se parties generally should be allowed leave to amend, it may appropriately dismiss a claim without prejudice "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[66]  "[T]he district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."[67]  Here, Plaintiff does not move to amend, nor does he suggest changes that would cure the errors identified in this opinion.  The Court determines for the many reasons explained throughout this opinion that Plaintiff cannot prevail on any of the facts alleged in the Complaint, and finds that it would be futile to allow him leave to amend.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is **granted**.  This case is dismissed in its entirety without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: January 16, 2024          S/ Julie A. Robinson

                                 JULIE A. ROBINSON
                                 UNITED STATES DISTRICT JUDGE

---

[66] *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010)) (alteration omitted).

[67] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC S. CLARK,

      Plaintiff,

      v.

MERRICK GARLAND et al.,

      Defendants.

Case No. 23-2170-JAR-RES

### MEMORANDUM AND ORDER

Plaintiff Eric S. Clark filed this pro se lawsuit challenging various provisions of 18 U.S.C. § 922 as violative of the Second Amendment. He sought damages, as well as injunctive and declaratory relief, against Attorney General Merrick Garland and six unknown federal government agents. In a January 16, 2024 Memorandum and Order, the Court granted Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and alternatively under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] Before the Court are several motions filed by Plaintiff related to the Court's January 16 Order: Motion for Leave to File Excess Pages (Doc. 24), Motion to Set Aside Judgment (Doc. 25); and three Motions to Amend Complaint (Docs. 27, 28, and 35). All of these motions are ripe and the Court is prepared to rule.[2] As described more fully below, the Court grants Plaintiff's motion to exceed the page limit on his motion to set aside. The Court denies Plaintiff's motions to set aside judgment and for leave to amend.

---

[1] Doc. 22.

[2] The Court has also considered Plaintiff's Notice of Supplemental Authority, filed on April 1, 2024. *See* Doc. 33.

## I.     Background

The Court incorporates by reference the factual background set forth in its January 16

Order.  Plaintiff generally alleged in his Complaint that 18 U.S.C. § 922 is unconstitutional.

Specifically, he claimed that the background check provisions in § 922(t), the prohibition on

possessing a firearm "which has had the importer's or manufacturer's serial number removed,

obliterated, or altered" in § 922(k), and the prohibition on "an unlawful user of . . . any

controlled substance" possessing a firearm in § 922(g)(3) all violate the Second Amendment on

their face and as applied to him.  Plaintiff prayed for the following relief: (1) a declaration that

the provisions at issue violate the Second Amendment under the Declaratory Judgment Act; (2)

nominal damages, injunctive, and equitable relief under 42 U.S.C. § 1983; and (3) compensatory,

injunctive, and equitable damages as a "private right of action for injunctive relief and equitable

relief" under *Bivens*.  Plaintiff's claims are based on his past experience attempting to purchase

firearms as a convicted felon whose rights have been restored, and on his future intention to

purchase firearms, use a controlled substance, and obliterate a serial number in the course of

restoring a firearm.

In its January 16 Order, the Court found that it lacked subject matter jurisdiction over

Plaintiff's claims on two grounds.  First, the Court found that Plaintiff's claims against the

United States for damages, and for retrospective injunctive and declaratory relief are barred by

the doctrine of sovereign immunity.  Second, the Court found that Plaintiff lacked standing

because he had not alleged an injury-in-fact.  Assuming that Plaintiff could establish subject

matter jurisdiction, the Court found that Plaintiff also failed to state a claim upon which relief

can be granted.  First, his individual-capacity claims against the federal actors under § 1983 and

*Bivens* are not cognizable.  And second, without a cognizable claim under § 1983 or *Bivens*,

Plaintiff could not assert a claim under the Declaratory Judgment Act. Finally, the Court found

that granting Plaintiff leave to amend (despite his failure to request it) was not warranted. The

Clerk entered judgment in favor of Defendants.[3]

Plaintiff now challenges the Court's rulings in the January 16 Order on several grounds,

and asks for leave to amend to cure the deficiencies identified by the Court in its January 16

Order.

## II.   Standards

Because Plaintiff proceeds pro se, the Court is mindful that it must construe his pleadings

liberally and apply a less stringent standard than which is applicable to attorneys.[4]  Plaintiff

states that he moves for relief under Rule 60(b), which provides that the Court may relieve a

party from final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.[5]

---

[3] Doc. 23.

[4] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[5] Fed. R. Civ. P. 60(b).

Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[6] The Court has discretion when granting a motion for relief from an order or judgment under Rule 60(b).[7]

Although Plaintiff only invokes Rule 60(b), most of his arguments contend that the Court misapprehended the law or facts, or that it committed clear error. A motion to alter or amend under Fed. R. Civ. P. 59(e) gives the Court an opportunity "to rectify its own mistakes in the period immediately following" a ruling.[8] Such a motion may be granted when "the court has misapprehended the facts, a party's position, or the controlling law."[9] The moving party must be able to establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[10] Like motions under Rule 60(b), motions to alter or amend are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[11] And whether to grant a motion to reconsider is left to the Court's discretion.[12]

Because Plaintiff's arguments invoke the standards in Rule 59(e), under the liberal pleading standard, the Court considers Plaintiff's motion under both Rule 59(e) and Rule 60(b).[13]

---

[6] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[7] *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998).

[8] *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)).

[9] *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citing *Servants of the Paraclete*, 204 F.3d at 1012).

[10] Servants of the Paraclete, 204 F.3d at 1012.

[11] *Nelson*, 921 F.3d at 929 (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

[12] Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp., 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing In re Motor Fuel Temp. Sales Pracs. Litig., 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

[13] Plaintiff's motion was filed within the 28-day filing limit under Rule 59(e).

## III.   Discussion

Plaintiff raises the following points of error: (1) the Court incorrectly applied sovereign immunity to the individual-capacity claims against Defendants; (2) the Court misapprehended his allegations and claims in finding that he lacked standing; (3) the Court incorrectly determined his *Bivens* claim was not cognizable; (4) the Court failed to consider his facial challenge to § 922 under the Declaratory Judgment Act; and (5) the Court should have allowed him leave to amend to correct the deficiencies identified in the Order.  The Court addresses each in turn.

### A.   Sovereign Immunity

The Court determined that "sovereign immunity barred Plaintiff's claims for monetary damages and for retrospective injunctive and declaratory relief against the United States."[14] Plaintiff argues it was error for the Court to apply sovereign immunity to Defendants in their personal capacities.

The Court's Order applied sovereign immunity to the official-capacity claims against Defendants, which are claims against the United States.[15]  An action alleging that an official engaged in "wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States."[16]  Suits for damages against the United States are barred by the doctrine of sovereign immunity.[17]  Moreover, "*Ex parte Young* 'may not be used to obtain a declaration that a[n] . . . officer has violated a plaintiff's federal rights in the past.'"[18]

---

[14] Doc. 22 at 8.

[15] *See Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687–88 (1949)).

[16] *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) (citation omitted).

[17] *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).

[18] *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019) (quoting *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998)).

The Court did not apply sovereign immunity to Plaintiff's individual-capacity claims. Thus, there was no error in the Court's ruling that Plaintiff's claims against the United States are barred by the doctrine of sovereign immunity except to the extent he seeks prospective injunctive relief.

### B.     Standing

Next, Plaintiff argues that the Court erred in finding he lacked standing to challenge 18 U.S.C. § 922. He argues that: (1) the Court improperly considered evidence outside the pleadings regarding the Voluntary Appeal File ("VAF") process without converting the motion to a summary judgment motion; (2) the Court misapprehended his alleged injury as to past firearm purchases by failing to consider the delay in exercising his right to bear arms due to the background check process; (3) the Court erred in relying on his lack of criminal prosecution when finding no injury as to his pre-enforcement claims; and (4) the Court should consider new evidence developed since the Court's July 16 Order.

### 1.     Past Attempts to Purchase Firearms

In the Court's January 16, Order, it discussed the FBI's instructions to Plaintiff about how to follow the VAF procedure after he appealed his background check denial. These instructions provided him with a website to register under this alternative process, which the FBI advised would avoid him being subject to future denials and delays on account of his prior felony. The Court drew a reasonable inference that Plaintiff did not follow this procedure, an inference Plaintiff does not dispute. The Court found that Plaintiff did not suffer concrete injuries from enforcement of 18 U.S.C. § 922(t) based on his past purchases of firearms because he was ultimately approved to purchase the firearms each time and provided with a method to avoid delays and denials and chose not to follow it.

As an initial matter, Plaintiff argues that the Court erred by considering matters outside the pleadings when it considered standing. Specifically, Plaintiff argues that the Court should not have considered the letters attached to Plaintiff's Complaint and Defendants' motion to dismiss which showed that he was offered an alternative VAF procedure that would have allowed him to circumvent the background check process that he alleges caused his past denials and delays when attempting to purchase firearms. Defendants respond that the Court was permitted to consider these materials because they address jurisdictional facts, and not the merits under Rule 12(b)(6).

The Court agrees with Defendants. As explained in the January 16 Order, standing is jurisdictional.[19]

> When a party challenges the allegations supporting subject-matter jurisdiction, the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts . . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]."[20]

Moreover, even if the facts underlying the standing inquiry are considered to be intertwined with the merits of the action, requiring conversion from a Rule 12(b)(1) motion to a Rule 12(b)(6) motion,[21] the Court would have considered this evidence without further converting it to a summary judgment motion. First, the Court was permitted to consider the Complaint along with all attachments to the Complaint on a Rule 12(b)(6) motion under Fed. R.

---

[19] *See, e.g., Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021) (quoting *Felix v. City of Bloomfield*, 841 F.3d 848, 854 (10th Cir. 2016)).

[20] *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001)).

[21] See id.

Civ. P. 10.  Second, because the background check responses are discussed in the Complaint, are central to Plaintiff's claims in the case, and neither party disputed their authenticity, the Court could consider them without converting the motion to one for summary judgment.[22]

Plaintiff suggests he should not have been required to address the alternate VAF procedure in his Complaint, but the Court disagrees to the extent he alleges that he was injured after he received these instructions in 2021, or that there is a substantial threat of future enforcement.  This procedure was designed to allow purchasers like Plaintiff who have had their rights restored to avoid delays and denials during the background check process.  The Court found that Plaintiff failed to demonstrate a concrete and particularized injury with respect to his past attempts to purchase firearms because the FBI background check denials were all reversed, and because Plaintiff failed to identify the injury caused by the delay in the background check process.

Plaintiff argues that the Court failed to sufficiently address his claimed injury based on the delay associated with the background check process.  Assuming that the Court erred by neglecting to find Plaintiff suffered an injury-in-fact due to the delay associated with the FBI's background check system, it would still have dismissed his case because Plaintiff failed to state a claim upon which relief can be granted under *Bivens* and the Declaratory Judgment Act, as discussed below.

### 2.    Pre-Enforcement Challenges

In addition to the claimed injury associated with his past attempts to purchase firearms,

---

[22] *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) ("The 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,' . . . [but] 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.' (alteration omitted) (first quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1201, 1215 (10th Cir. 2007); and then quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002))).

Plaintiff brought pre-enforcement challenges to all three provisions in § 922 on the basis that he

intends to purchase firearms in the future, to use marijuana, and to obliterate a firearm's serial

number.  As the Court explained, "[a]n allegation of future injury may suffice if the threatened

injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."[23]  To

meet this standard, Plaintiff was required to allege that he has "an intention to engage in a course

of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there

exists a credible threat of prosecution thereunder."[24]

Plaintiff argues that he should not have to risk prosecution in order to challenge § 922(t).

Plaintiff is correct, and the Court found that his Complaint sufficiently alleged the first part of

the requisite test—an intention to engage in conduct proscribed by the § 922(t), (k), and (g)(3).

But the Court found no facts alleged that he faced a *credible threat of prosecution*.  Plaintiff

could not be prosecuted under § 922(t), since that statute imposes obligations on the Federal

Firearms Licensees ("FFLs").  And he failed to allege sufficient facts to suggest he would be

prosecuted under either § 922(k) or (g)(3).  Moreover, given the VAF procedure that would have

allowed Plaintiff to circumvent the cumbersome background check system he alleges was

triggered by his felony record, he has the option of avoiding the background check delays in the

future, but chooses not to do so.  Plaintiff argues that availing himself of the VAF procedure

violates his right to freedom of association rights under the First Amendment, but these are

conclusory assertions and were not presented to the Court in the first instance.

Finally, even if the Court agrees with Plaintiff that it erred by neglecting to find he

suffered an injury-in-fact based on conduct he intends to engage in that is proscribed by statute,

---

[23] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)).

[24] *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Plaintiff fails to state a claim upon which relief can be granted under *Bivens* and the Declaratory Judgment Act, as discussed below.

### C.    Failure to State a Claim

Plaintiff also challenges the Court's finding that he fails to state a claim upon which relief can be granted.  Plaintiff concedes that he may not seek relief against these federal Defendants under 42 U.S.C. § 1983, but he argues that the Court erred in finding that a cause of action under *Bivens* is not cognizable, and in failing to address his claims that § 922(g)(3), (k), and (t) are facially unconstitutional under the Declaratory Judgment Act.  The Court finds no error or manifest injustice associated with its rulings under Rule 12(b)(6).  Even if Plaintiff had sufficiently alleged facts to support standing, the Court would have dismissed Plaintiff's remaining claims for failure to state a claim under Rule 12(b)(6).

### 1.    Bivens

Plaintiff argues that the Court erred in finding that there is no implied right under *Bivens* to seek relief against federal officials in their individual capacity for violations of the Second Amendment.  The Court finds no clear error in its ruling.  The Tenth Circuit has described the expansion of *Bivens* as "impermissible in virtually all circumstances."[25]  The Supreme Court has not extended *Bivens* to the Second Amendment context,[26] and Plaintiff presents no argument in his motion to reconsider that persuades the Court that it should do despite the lack of

---

[25] *Silva v. United States*, 45 F.4th 1134, 1140–41 (10th Cir. 2022) (citing *Egbert v. Boule*, 596 U.S. 482, 498–99 (2022)).

[26] *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (citation omitted) (stating the limited contexts where the Court has extended *Bivens*); *Meeks v. Larsen*, 611 F. App'x 277, 286 (6th Cir. 2015) (explaining that there is no authority for extending *Bivens* to the Second Amendment and that special factors counsel against doing so); *Cronk v. FBI*, No. 22 CV 51, 2023 WL 6064925, at *2 (N.D. Ind. Sept. 18, 2023) ("Indeed, only a handful of courts have even addressed the question, with all of them declining to extend *Bivens* into the Second Amendment context.").

Congressional action and the alternative remedial structure provided under the Brady Act regulations.[27]

##### 2. Declaratory Judgment Act

Plaintiff argues that his final cause of action asserted under the Declaratory Judgment Act should not have been dismissed as to his facial challenges to § 922(g)(3), (k), and (t). Again, Plaintiff fails to identify clear error in the Court's ruling. Plaintiff has no remaining cognizable claim for relief against these Defendants, either in their official or individual capacities.[28] Regardless of whether Plaintiff brings facial or as-applied challenges to the statute, the Declaratory Judgment Act does not provide him with an independent claim.[29] "[T]he Declaratory Judgment Act is procedural only."[30] Therefore, in the absence of a cognizable claim under *Bivens* for monetary relief, Plaintiff cannot seek declaratory relief alone under the Declaratory Judgment Act.

##### D. Leave to Amend

Plaintiff's last point of error is that the Court improperly denied him leave to amend. He asserts that many of the errors cited by the Court are curable and submits a proposed amended pleading for the Court's review, as well as three separate motions for leave to amend. As discussed above, however, even if the Court determined that Plaintiff could cure the standing problem by alleging additional facts, he could not overcome the fact that there is no implied right

---

[27] *Silva*, 45 F.4th at 1141 (explaining that under *Egbert*, courts should dispose of *Bivens* claims because "Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs." (quoting *Egbert*, 596 U.S. at 1804)).

[28] Under *Bivens*, Plaintiff could only recover money damages. 403 U.S. 388, 410 (1971) (Harlan, J. concurring); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

[29] *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016).

[30] *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)).

of action against federal officials under *Bivens* for violations of the Second Amendment. And because there is no claim under *Bivens*, Plaintiff cannot maintain a standalone claim under the Declaratory Judgment Act. There are no additional facts Plaintiff could allege that would overcome these hurdles.

Therefore, the Court must deny Plaintiff's post-judgment motions for leave to amend. "After a district court enters a final judgment, as occurred here, it may not entertain motions for leave to amend unless the court first sets aside or vacates the judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b)."[31] As described above, because the Court finds no cause to set aside or vacate judgment under either Rule 59(e) or Rule 60(b), it must deny Plaintiff's motions for leave to amend.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File Excess Pages (Doc. 24) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Set Aside Judgment (Doc. 25) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's three Motions to Amend Complaint (Docs. 27, 28, 35) are **denied**.

**IT IS SO ORDERED.**

Dated: May 30, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[31] *Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004) (citing *Seymour v. Thornton*, 79 F.3d 980, 987 (10th Cir. 1996)).